RESOLUTION TRUST CORPORATION,
as Receiver for Pioneer Federal
Savings Bank, Plaintiff,

v.

UNITED TRUST FUND, INC., a corporation organized and existing under the laws of the State of Florida; Financial Federal Savings and Loan Association of Dade County, a savings and loan association conducting business in Dade County, Florida, and Federal Home Loan Bank of Atlanta, Defendants.

No. 91–1315 CIV.

United States District Court,
S.D. Florida.

Aug. 21, 1991.

Richard Bernstein, Haley, Sinagra & Perez, P.A., Miami, Fla., for Resolution Trust.

Larry A. Stumpf, Rubin, Baum, Levin, Constant, Friedman & Bilzin, Miami, Fla. and Roger B. Kaplan, Wilentz, Goldman & Spitzer, Woodbridge, N.J., for intervenor/defendant Liberty Bell.

Jeffrey A. Tew, Kirkpatrick & Lockhart, Miami, Fla., for Federal Home Loan Bank of Atlanta.

James L. Armstrong, Kelley, Drye & Warren, Miami, Fla., for Financial Federal Sav. and Loan.

Bernard S. Mandler, Miami, Fla., Attorney for United Trust Fund.

**1.** 12 U.S.C. § 1821(e)(2).

**2.** In November of 1986, UTF sold to Liberty Bell all of its right, title and interest in "the lease"

## MEMORANDUM OPINION

STEPHEN T. BROWN, United States Magistrate Judge.

### I. BACKGROUND

On August 9, 1989, Congress passed the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (hereinafter "FIRREA"). As a result, FIRREA created the Resolution Trust Corporation (hereinafter "RTC") to resolve insolvencies in the banking industry. *See* 12 U.S.C. § 1821 et seq. RTC is the plaintiff in the instant case as a result of the demise of Pioneer Savings Bank.

At issue in this case is whether the repudiation of a lease by RTC is timely and effective as required by the code[1] and what effect, if any, this repudiation has on a letter of credit.

### FACTS

Pioneer Savings Bank entered into a purchase and lease back arrangement with United Trust Fund (hereinafter "UTF") in April of 1986. In essence, Pioneer Savings Bank sold to UTF its corporate headquarters and then proceeded to lease back the premises. Financial Federal Savings and Loan Association (hereinafter "Financial Federal") loaned the money to UTF to make the purchase. The tenant's rental and other obligations under the lease were secured by a letter of credit issued by the Federal Home Loan Bank of Atlanta, Georgia in the amount of $4.5 million dollars. The letter of credit was originally to be in favor of UTF but was assigned to Financial Federal as collateral to further secure a $12,000,000.00 mortgage for the funds Financial Federal had advanced for the purchase.[2]

Pioneer Savings Bank (hereinafter "Old Pioneer") encountered financial difficulties and on February 1, 1990, RTC was appointed as conservator. On March 8, 1990, Old Pioneer was placed into receivership with

and the Letter of Credit thus making Liberty Bell the real party-in-interest defendant herein.

the RTC as the receiver, and a new entity was created known as Pioneer Federal Savings Bank (hereinafter "New Pioneer"). On that same date, New Pioneer was placed into a conservatorship with the RTC appointed as the conservator. On or about March 8, 1990, RTC entered into an agreement between Old and New Pioneer transferring the lease which is the subject matter of this litigation (hereinafter "the lease") to New Pioneer. While all of this was going on, both Old Pioneer and New Pioneer continued to occupy the premises under "the lease", to pay the rents and to perform the tenant obligations. A receiver was ultimately appointed for New Pioneer. Shortly thereafter, the RTC entered into a purchase and assumption agreement with Great Western Bank which gave Great Western a 90 day option on taking over "the lease". On June 11, 1991, Great Western sent a letter to RTC indicating its intent not to exercise this option [3] and on June 21, 1991, the RTC, attempting to utilize 12 U.S.C. § 1821(e)(1) and (2) sent a letter repudiating "the lease" effective July 1, 1991.

Because the repudiation was to be effective July 1, and the RTC had reason to believe that the defendants would attempt to draw on the letter of credit, RTC filed suit to enjoin any activity on the letter of credit.[4] Liberty Bell has filed a counterclaim seeking a declaratory judgment that the repudiation was improper and thus constituted a breach of "the lease" entitling them to draw on the letter of credit and to seek damages under the lease provisions.

## DISCUSSION

Congress has given the RTC as conservator or receiver the right to disaffirm or repudiate any lease so long as:

1. The institution (in this case New Pioneer) was a party.

2. The conservator or receiver determines the lease to be burdensome.

3. Exercising this right promotes the orderly administration of the institution's affairs. See 12 U.S.C. § 1821(e)(1). However, this right is a limited one.

If the rights to repudiate are to be exercised, that determination *shall* be made "within a reasonable period following such appointment." 12 U.S.C. § 1821(e)(2). [Emphasis added] In the event that the RTC acts in accordance with these provisions, where a lease is involved, the RTC is not liable for any damages other than contractual rent through the date the letter of repudiation is mailed or the date the repudiation becomes effective (whichever is later). In addition, the lessor shall not have any claim for damages under an acceleration clause or other penalty provision in the lease. See 12 U.S.C. § 1821(e)(4).

In order to determine whether or not the undisputed repudiation in this case was made "within a reasonable period following such appointment", the court must determine when that reasonable period began to run, and what in fact is a reasonable period.

■ The first question to consider is when the "reasonable period" commences. It is the opinion of this court that the reasonable period commenced, in the instant case, on or about March 9, 1990, when the RTC was appointed as conservator for New Pioneer. It is clear that 12 U.S.C. § 1821 gives either the conservator or the receiver the opportunity to repudiate the lease. See 12 U.S.C. § 1821(e)(1). Furthermore, the section dealing with the reasonable time period to repudiate is applicable to "the conservator *or* receiver" [Emphasis added]. 12 U.S.C. § 1821(e)(2). RTC makes the argument, in effect, that

---

**3.** It should be noted, however, that according to the terms of the purchase and assumption agreement between RTC and Great Western, that Great Western had to act, affirmatively and in writing, to exercise the option or it expired by its own terms on June 1, 1991.

**4.** This court recommended denial of the plaintiff's motion for preliminary injunction prior to

the parties' consent to trial before this court pursuant to 28 U.S.C. § 636(c). This recommendation was affirmed by the Honorable Federico A. Moreno, United States District Judge. The letter of credit was "drawn down" and the funds are at Financial Federal awaiting this decision which will determine the rights to the money.

each time the "legal entity" changes, the time for repudiation begins anew. Other courts have considered this argument and rejected it. *See* e.g. *RTC v. Cedarminn,* No. 4–90–828 (D.Minn. March 4, 1991), where the identical argument was made and the court stated "it is clear that the statute requires either the conservator or the receiver, whichever is appointed, to make the repudiation determination within the reasonable period following its appointment." *Id.* at 19.

The evidence before this court is that the RTC frequently appoints conservators, receivers, new conservators, and new receivers in cases of thrift difficulties.[5] To sustain the RTC's position that each time a new conservator and/or receiver was appointed the time period begins anew would allow the RTC to repudiate a lease at any time it wanted to, in direct contravention of 12 U.S.C. § 1821(e)(2). Under the RTC's position, if the RTC waits for an inordinate period of time and then decides to repudiate a lease, they can simply produce another "legal fiction" to start the time period running again. This would render U.S.C. § 1821(e)(2) meaningless. Therefore, the reasonable period began to run in the instant case on or about March 9, 1990, when the first conservatorship was created.

■ The next issue is the definition of a "reasonable period". Congress initially proposed that this reasonable period be limited to 90 days. H.Rep. No. 101–54(1) at page 331, reprinted in 1989 U.S.Code Cong. & Adm.News, 86, 127. While that provision was subsequently eliminated, it does give the court some indication of the time frame that Congress was considering.

William Nevin testified that he became the Chief Executive Officer of "Old Pioneer", having been appointed as conservator, on February 2, 1990. Mr. Nevin testified at length about his experience in the banking industry and his familiarity with situations similar to the one he found himself in, and clearly indicated that he was under the impression that he had six months from the date he was appointed to deal with repudiation. In March of 1990 Mr. Nevin began to wear "two hats" in that he was acting as the receiver for Old Pioneer as well as the conservator for New Pioneer. There is ample evidence that both he and the people working with him, including but not limited to Roger Coplen, the attorney for the RTC, were under the impression that they had through and including September 9, 1990 to repudiate contracts. In fact, there is documentary evidence [6] which was sent out at Mr. Nevin's direction and with input from attorney Coplen. Mr. Nevin testified that he made a study to determine whether or not "the lease" was burdensome and whether or not repudiation would promote the orderly administration of the institution's affairs, and made a decision on or about September 9, 1990 not to repudiate "the lease".

Mr. Nevin remained conservator for New Pioneer until March 1, 1991 when a receivership was created and Theresa Marble took over as the receiver.

Ms. Marble ultimately recommended repudiation of the lease to attorney Coplen on June 21, 1991, but admitted that she did no investigation regarding whether or not this lease was burdensome or whether it would further promote the orderly administration of the institution's affairs. Thus, there is a 16 to 17 month period of time between the date Mr. Nevin was originally appointed as a conservator and the date "the lease" was repudiated.

Other courts in dealing with a reasonable time period have held that 14 months was unreasonable (See *RTC v. Cedarminn,* su-

---

5. Testimony was offered by witness, Michael Fanneroff, a Supervisory Resolution Analyst with RTC, that this is a frequent occurrence where RTC takes over an institution, and while he refused to admit that these were no more than "pass through receiverships" he did concede that the legalities of changing from conservators to receiverships back to conservators and back to receiverships contained much boiler plate language, frequently amounting to no

more than blanket signing of papers and mere legal formalities.

6. On August 23, 1990, a memorandum was sent to all loan officers from K. Michael DeFreytas reminding them of the deadline of September 9, 1990 to repudiate any contract of Pioneer's. (Exhibit LB–47 in evidence).

pra,) 9 months unreasonable (See *Rechler Partnership v. RTC* No. 90–3091 (D.N.J. Sept. 4, 1990)) and 2 months unreasonable (See *RTC v. Owens,* No. 90–0726 (W.D. Missouri May 22, 1991)).

Additionally, in this case, there was a conscious decision made by RTC *not* to repudiate the lease. RTC then proceeded to act in accordance with that decision. No law has been cited to this court that gives the RTC "multi-bites at the apple". It is the opinion of this court that the decision not to repudiate constituted a conscious decision by RTC not to exercise the statutory right conferred upon it by 12 U.S.C. § 1821(e)(1). At that point RTC became, once again, the lessee, bound by the terms and conditions of the lease.

Congress mandated the "reasonable period" to exercise repudiation not for the benefit of RTC, but for the benefit of lessors, property owners and the public in general. The entry of the RTC into the affairs of a troubled bank creates substantial uncertainties for all of those having pending dealings with that institution. Limiting RTC's right to repudiate to be exercised within a reasonable time, is to limit the duration of that uncertainty.[7]

In this case, the RTC made a conscious decision not to repudiate the lease, then attempted to find a purchaser for the lease, and when that deal ultimately fell through, spontaneously decided to exercise their right of repudiation. As noted by the District Court in New Jersey "the RTC cannot choose its own pragmatic middle path". *See Rechler, supra.*

In addition, nothing in the statute suggests that the RTC has "multi-opportunities" to repudiate a lease. The statute only speaks of one opportunity and that opportunity was properly considered by the RTC

in this matter and resolved some 10 months before repudiation took place.

While involving the FDIC as opposed to the RTC (a distinction without a difference for the purposes of this case), the District Court of the Southern District of Florida has recently pointed out that a receiver may either accept or reject executory contracts, but once a decision is made to accept a contract that decision is binding. *See Bayshore Exec. Plaza Partnership v. FDIC,* 750 F.Supp. 507 (S.D.Fla.1990).

The plaintiff presented evidence to attempt to substantiate the position that, since the defendants acquiesced in RTC's activity, they are estopped from arguing that the repudiation was untimely. This court rejects that argument for two reasons:

1. While much evidence was introduced showing, through correspondence between the defendants, that they would all be better off if RTC remained as the lessee, there was absolutely no evidence that any of this correspondence was ever communicated to the RTC. An essential element of estoppel is reliance. *See Dade County v. Rohr Industries, Inc.,* 826 F.2d 983 (11th Cir. 1987). It is axiomatic that one cannot rely on something that they have no knowledge of.[8]

2. As pointed out by the defendants it is ludicrous to estop them from asserting a repudiation based on their maintenance of the lease status quo. This is the obvious position that any lessor would take to make full use of their property.[9] In conclusion, this court finds that the decision by RTC not to repudiate "the lease" thereafter bound them to the terms and conditions of same, but that in any case, the 16 to 17 months from appointment of the original conservators to the date of the letter of repudiation is unreasonable.

---

7. Indeed substantial evidence was introduced to show that the landlord had prospective purchasers for the premises and/or lease but was unable to enter into serious negotiations due to the uncertainty surrounding RTC's status as a tenant.

8. Conversely RTC sent at least two letters to the landlord indicating their intent to satisfy their duties under the lease and never indicated to

the contrary prior to the repudiation letter of June 21, 1991.

9. It should further be pointed out that the defendants really had no choice in the matter anyway, since there is no provision by which the defendants could have required the RTC to repudiate the lease and thus vacate the premises.

■ Having determined that the repudiation of the lease in this case was untimely, the court must next look to the consequences. Once a decision was made not to repudiate the lease the RTC became the lessee for all intents and purposes, and thus is bound by the terms and conditions of the lease. Therefore, the subsequent untimely repudiation amounts to a default under the lease from which damages flow.[10] "The lease" specifically provides that in the event of a default the monies from the letter of credit may be used to compensate the lessor for damages incurred.[11] In accordance with the findings of this court and the terms of the lease, this court will allow the defendant Liberty Bell to make monthly withdrawals for damages incurred as a result of the default, noting, of course, that the defendant has a duty to mitigate those damages. *See Vareka Investments, N.V. v. Am. Inv. Prop. Inc.*, 724 F.2d 907 (11th Cir.1984).

■ Finally, Liberty Bell asserts in its counterclaim that, to the extent the proceeds of the letter of credit are insufficient to compensate for damages incurred, it be allowed an equitable set-off or recoupment directed to the remainder of the two million dollar mortgage still held by RTC pursuant to the purchase and lease back agreement. It is unknown at this time whether the damages of Liberty Bell will exceed the proceeds from the letter of credit and to speculate on its entitlement to proceeds from the mortgage in question is premature at this time. A debt is not subject to set-off unless it has matured. *Liberty Savings Ass'n v. Sun Bank of Jacksonville*, 572 F.2d 591 (7th Cir.1978). In the opinion of this court there is no "justiciable controversy"[12] before it as to the possibility of the anticipated damages, so relief will not be granted at this time.

Accordingly, a final judgment is herewith entered against the Plaintiff, Resolution Trust Corporation and in favor of the Defendant, Liberty Bell on its counterclaim. Furthermore, judgment is entered in favor of the Defendants, United Trust Fund, Inc. and Financial Federal Savings and Loan Association of Dade County.

This court has previously reserved jurisdiction for the purpose of dealing with claims for attorneys' fees and/or costs. The court further reserves jurisdiction over withdrawal of funds from the letter of credit and to award such damages as are consistent with:

a. The rulings of this court.

b. The terms of the lease.

c. The relief sought by the defendant/counterclaimant, Liberty Bell.

DONE AND ORDERED.

---

10. Since this court has decided that the terms of the lease have been breached giving rise to damages, issues raised by the defendants regarding 12 U.S.C. § 1821(e)(11) and (e)(13) need not be addressed by this court.

11. This case differs from *Cedarminn* in that the evidence before this court is that RTC is no longer fulfilling its obligations as a tenant under "the lease".

12. *See Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).