**UNISYS FINANCE CORPORATION,**
**Plaintiff–Appellant,**

**v.**

**RESOLUTION TRUST CORPORATION,**
**as Receiver for Concordia Federal Bank**
**for Savings, Defendant–Appellee.**

**No. 91–3827.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 25, 1992.

Decided Nov. 12, 1992.

Rehearing and Rehearing En Banc
Denied Dec. 21, 1992.

J. Timothy Eaton (argued), Stephen O'Donnell, Theodore E. Harman and Michael D. McCormick, Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., for plaintiff-appellant.

Thomas R. Meites, Michael M. Mulder, Annette R. Appell, Roberta Levinson, Meites, Frackman, Mulder & Burger, Chicago, Ill., and Dennis S. Klein (argued), Hughes, Hubbard & Reed, Washington, D.C., for defendant-appellee.

Before BAUER, Chief Judge, and POSNER and EASTERBROOK, Circuit Judges.

POSNER, Circuit Judge.

This appeal presents a question of first impression and potentially broad significance concerning the powers of the Resolution Trust Corporation, the federal agency that administers failed savings and loan associations.

As amended by section 212(e) of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (P.L. 101–73, 103 Stat. 183), section 1821(e)(11) of the Federal Deposit Insurance Act provides that "No provision of this subsection [i.e., subsection (e) of section 1821] shall be construed as permitting the avoidance of any legally enforceable or perfected security interest in any of the assets of any depository institution," provided the security interest was not obtained in contemplation of insolvency or with the intention of hindering, delaying, or defrauding creditors. 12 U.S.C. § 1821(e)(11). In 1987 Unisys Finance Corporation, the plaintiff, made a five-year, level-payments lease of computer equipment to Concordia Federal Bank for Savings. To secure its obligations under the lease, Concordia pledged certain securities; and there is no doubt that Unisys obtained a perfected security interest in them. Concordia went bust, and in 1990 the Resolution Trust Corporation was appointed receiver. Acting under the express and unquestioned power granted it by subsection (e)(4) of 12 U.S.C. § 1821, the RTC repudiated the lease. At the time, Concordia was current in its rental payments, but had the lease remained in effect until termination it would have owed Unisys another $303,000 in rent. In this court Unisys concedes that it cannot sue Concordia, or the RTC, or the bank that holds the pledged securities in escrow, for the rent it lost as a result of the premature termination of the lease, or for any other damages that it may have suffered as a consequence of that event. The statute is explicit in cutting off the lessor's right to obtain damages for the receiver's repudiation or disaffirmance of a lease. 12 U.S.C. § 1821(e)(4)(A). But Unisys contends that it has an entitlement to satisfy any such claim out of the pledged securities. The RTC concedes that Unisys has a perfected security interest in rent that had not yet come due at the time that the RTC repudiated the lease, but argues that the interest is unenforceable because Unisys has no claim to that rent. That claim is dead by operation of the statute,

and when it died the securities pledged to its satisfaction became the unencumbered assets of the receivered savings bank.

The district court, which has jurisdiction under 12 U.S.C. § 1821(d)(6) to review the denial of claims against assets under the RTC's control, agreed with the RTC and denied Unisys relief, precipitating this appeal.

Federally insured banks, savings and loan associations, credit unions, and similar financial institutions are not subject to bankruptcy law. 11 U.S.C. § 109(b)(2). But the receivership provisions of federal banking law, 12 U.S.C. §§ 1821(c)–(r), create a parallel regime for those institutions. Under bankruptcy law, a trustee in bankruptcy (or debtor in possession), the equivalent of the RTC as receiver in this case, can terminate the unexecuted portion of any contract or lease signed by the bankrupt. 11 U.S.C. § 365(a). If this happens, the promisee or lessor, to the extent that he sustains damages as a result of the termination, can claim them as a general creditor in the bankruptcy proceeding, except that the amount a lessor can claim is truncated. 11 U.S.C. § 502(b)(6). In the parallel provision for financial institutions, 12 U.S.C. § 1821(e)(4), the lessor's damages claim is completely extinguished except for back rent. With the claim gone, any basis for enforcing a security interest is gone with it.

■ The bankruptcy parallel is instructive. If a secured creditor is oversecured, in the sense that the value of the security pledged to repay the debt owed him exceeds any plausible estimate of the debt, the bankruptcy court can take away the excess security and give it to another creditor. *In re James Wilson Associates*, 965 F.2d 160, 171 (7th Cir.1992). This shows that the creditor doesn't "own" the security—has no rights over it save as necessary to protect a claim that he owns. If Unisys had a claim against Concordia worth $100—say for a few days' back rent (we mentioned that subsection (e)(4) doesn't extinguish back-rent claims)—it would be a secured creditor, entitled to assert its perfected security interest in the pledged securities, but only up to the modest level necessary to assure the collectibility of a $100 claim. It could not claim a perfected security interest of $1 million, and the bankruptcy court could take away the excess security and assign it other creditors. Well, as it happens, Unisys's claim is not $100. It is zero. Its perfected security interest entitles it to no more. Unisys quotes to us from *Ticonic National Bank v. Sprague*, 303 U.S. 406, 411–12, 58 S.Ct. 612, 614, 82 L.Ed. 926 (1938): "Secured creditors have two sources of payment for their claims—the liability of the debtor and the liability of the pledged or mortgaged assets." That is true. An unsecured creditor must file his claim in the bankruptcy proceeding and take his chances there. A secured creditor, with qualifications unnecessary to worry about here, can bypass bankruptcy and seek to collect his claim from the collateral. *In re James Wilson Associates, supra*, 965 F.2d at 167. But he must have a claim. The key words in the quoted passage, so far as our case is concerned, is, thus, "sources of payment *for their claims*." You must have a claim before you can look to the collateral for its repayment.

■ Unisys muddies these rather clear waters by telling us that if we reject its interpretation of the statute we shall be creating a grave constitutional question, since for purposes of the takings clause of the Fifth Amendment a lien (which is just another name for a security interest, 11 U.S.C. § 101(37)) is property and cannot be confiscated without just compensation. See *United States v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), and cases cited there. But a lien is property in a different sense from that in which we speak of a house as property. Subject to renovation, repair, extension, rebuilding, fire, flood, and the like, a house has a more or less constant size and shape through time. A lien is parasitic on a claim. If the claim disappears—poof! the lien is gone. (We ignore the case of revolving credit, where a security interest may exist at a time when there is no loan outstanding and attach to a new loan as

soon as it is made. See UCC § 9–312(7).) Had Concordia paid off its obligations under the lease in full, Unisys would have ceased to have a legally protected interest in the pledged securities. "There is no unconstitutional taking of a security interest that is far in excess of the claim secured by it, if, after the taking, the creditor remains adequately protected." *In re James Wilson Associates, supra,* 965 F.2d at 171. If the claim is zero, there is no taking, period. Cf. *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 601, 55 S.Ct. 854, 868–69, 79 L.Ed. 1593 (1935).

Unisys's real gripe thus is not the loss of its security interest; it is the loss of the claim that the security interest secured. But it does not argue that the application of the 1989 amendment of section 1821(e) to a lease that had been entered into before the amendment was enacted violated any provision of the Constitution by cutting down on Unisys's contractual rights. Not wanting to decide constitutional issues unnecessarily, we express no view on the merits of such an argument.

AFFIRMED.