FLEET NATIONAL BANK, Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, Receiver for Home National Bank of Milford, Defendant.

Civ. A. No. 91–40029–NMG.

United States District Court,
D. Massachusetts.

Feb. 1, 1994.

William R. Grimm, Hinckley, Allen, Snyder & Comen, Boston, MA, Douglas A. Giron,

Hinckley, Allen, Snyder & Comen, Providence, RI, Roy A. Bourgeois, Bourgeois, Millott, Dresser & Massad, Worcester, MA, and William F. McMahon, Richard P. McMahon, and Marifrancis McGinn, McMahon & McMahon, Providence, RI, for Fleet National Bank.

Allen N. David, Peabody & Arnold, Boston, MA, and Clark van der Velde, F.D.I.C., Franklin Consolidated Office, Franklin, MA, for F.D.I.C., Receiver for Home National Bank of Milford and Federal Deposit Ins., F.D.I.C.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Pending before this Court are motions for summary judgment filed on January 20, 1993 by plaintiff, Fleet National Bank ("Fleet") and on January 22, 1993 by defendant, Federal Deposit Insurance Company ("FDIC"), in its capacity as receiver for Home National Bank of Milford ("the Bank").

On February 25, 1991, Fleet filed two complaints for declaratory relief (docketed as C.A. 91–40029 and 91–40030) concerning, respectively, its alleged entitlement to liquidation of a perfected security interest in certain collateral and a letter of credit. On December 3, 1992, this Court granted FDIC's motion to consolidate the two actions and the parties stipulated that the letter of credit which was the subject of C.A. 91–40030 had expired with no resulting loss to Fleet.

## I. *FACTUAL BACKGROUND*

The Bank is a wholly-owned subsidiary of Home National Corporation ("the Parent"). This action arises out of a $4,000,000 loan made on December 27, 1988 by Fleet to the Parent's other wholly-owned subsidiary, Home Realty Trust ("the Realty Trust"), as evidenced by a promissory note ("the Note") in the same principal amount. The purpose of the Fleet loan was to finance the construction of the Bank's headquarters, a building situated on property held under a long-term

lease by the Realty Trust.[1] The Bank occupied its headquarters as a sublessee under subleases dated March 16, 1988 and February 1, 1989 between the Bank and the Realty Trust. In order to secure the Realty Trust's indebtedness to Fleet under the Note, the Realty Trust assigned the subleases to Fleet under an Assignment of Leases and Rents dated December 27, 1988. The rental payments from the Bank for occupancy of its headquarters funded the repayment of the loan to Fleet by the Realty Trust.

According to Fleet, immediately after the inception of the above-mentioned loan commitment on December 27, 1988, certain unfulfilled obligations covenanted by the Realty Trust and the Parent caused Fleet to request additional collateral to secure the loan. It is undisputed that the Bank and Fleet entered into a Pledge and Security Agreement dated June 21, 1989 ("the Agreement"), pursuant to which the Bank pledged, assigned and granted to Fleet, as further security for Fleet's loan to the Realty Trust, a security interest in U.S. Treasury Notes in the amount of $2,245,000. The Agreement secured the "obligations and liabilities" of the Bank to Fleet and pledged performance of the subleases.

The Bank provided this additional collateral to Fleet in exchange for Fleet's forbearance in pursuing remedial action in response to the unfulfilled loan obligations. The Bank depended upon its occupancy of the headquarters building to establish a successful banking business, and was thus vitally interested in the continuation of the loan financing. Moreover, on December 12, 1989, the Agreement was amended to provide additional security through U.S. Treasury Notes, bringing the total of such collateral to $5,000,000.[2] The pending dispute is about precisely what "obligations" are secured by the Agreement.

Principal and interest payments on the loan were duly made by the Realty Trust until May 1990. After nonpayment of the installment due May 31, 1990, Fleet gave notice of default in June 1990 and demanded repayment of the entire loan in accordance with the terms of the loan documents. On June 1, 1990, FDIC was appointed receiver for the Bank. By letter dated August 31, 1990, Fleet instructed FDIC to make all rental payments under the subleases directly to Fleet, but one month earlier, on or about July 31, 1990, FDIC had repudiated the subleases. FDIC alleges that all rent and/or other amounts due under the subleases, as of the effective date of the repudiation, had been paid in full and that, accordingly, there was no default by FDIC under the subleases. Fleet alleges that FDIC did not pay rent for June, July and August, 1990, but apparently it never made demand for such payments and the complaint does not seek to recover back rent payments.

The headquarters building was eventually sold on May 22, 1992 for $625,000 in liquidation of the loan default loss. Prior to the sale, Fleet commenced this action for declaratory judgment to determine the extent of its entitlement to liquidate the U.S. Treasury Notes collateral. A claim filed with FDIC was duly disallowed.

## II. *LEGAL ANALYSIS*

### A. **Summary Judgment Standard**

Summary judgment is permissible when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Inferences are drawn in the favor of the nonmoving party. *Space Master International, Inc. v. City of Worcester,* 940 F.2d 16 (1st Cir.1991); *Herbert W. Price v. General Motors Corporation,* 931 F.2d 162 (1st Cir.1991) (record viewed in light most favorable to nonmoving party).

In deciding whether a factual dispute is genuine, this Court must determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *accord Aponte–Santiago*

---

1. It is not clear to the Court why the documents are described as "subleases" rather than "leases", but titles do not appear to be material to any issue before the Court.

2. This amendment to the Agreement was incidental to the mooted letter of credit transaction, which was the subject matter of C.A. No. 91–40030.

*v. Lopez–Rivera,* 957 F.2d 40, 41 (1st Cir. 1992) (*citing Anderson*). "A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Technologies,* 882 F.2d 993 (5th Cir.1989) (*citing Anderson* ).

### B. Obligations Secured by the Pledge and Security Agreement

■ The Agreement herein at issue provides in pertinent part, that:

> [the Bank] pledges and assigns to [Fleet], and grants to [Fleet] a security interest in bonds or obligations ... to secure payment and performance of all obligations and liabilities whatsoever of [the Bank] to [Fleet] pursuant to the Lease [3], (as the same has been assigned by [the Realty Trust] to [Fleet] pursuant to the Fleet Loan Documents) ... said liabilities herein singularly and collectively referred to as obligations.

The dispute between FDIC and Fleet centers around the question of what "obligations" were secured by the security interest granted pursuant to the Agreement. Fleet argues that the Agreement covered the entire loan, and not merely the rentals due under the subleases and that therefore, it should be entitled to liquidate its perfected security interest to the full extent of the defaulted loan loss. FDIC asserts to the contrary that, as set forth by its terms, the Agreement secured only the Bank's performance under the subleases. Fleet argues alternatively that it should at least be entitled to liquidate its security interest to the extent of the loss which equals the value of the sublease before the repudiation. This Court agrees with FDIC that the Agreement secured only performance under the subleases, and, as described more fully below, that Fleet is not entitled to the requested liquidation.

The terms of the Agreement clearly provide that the pledged collateral secured the pledgor's (to wit, the Bank's) obligations to Fleet. The Agreement defined those obligations as obligations pursuant to the subleases. Moreover, it was the Realty Trust and not the Bank which was indebted to Fleet on the Note. The Bank was not a

party to the Note. Accordingly, even if this Court were to interpret the words of the Agreement in the manner suggested by Fleet, the Bank owes no obligations to Fleet which the Agreement could secure, other than those under the subleases.

■ In addition, it is significant that on August 27, 1990, Fleet submitted a Proof of Claim to FDIC which supports this Court's interpretation of the Agreement. The Proof of Claim stated that:

> Pursuant to a Pledge and Security Agreement dated June 21, 1989 (the "Pledge Agreement"), [the Bank] pledged, assigned and granted Fleet a security interest in certain U.S. Treasury Notes more particularly described therein *to secure the payment and performance of all its obligations and liabilities to Fleet under the First Sublease, the Second Sublease and the Additional Subleases.* (emphasis added)

Consequently, this Court finds that the Agreement secured only the Bank's obligations to Fleet under the subleases. Furthermore, because there is no writing evidencing any other agreement to apply the collateral to loan obligations the Realty Trust owed to Fleet, any such claim would be barred by the doctrine of *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) and the provisions of 12 U.S.C. § 1823(e).

### C. Terminated Security Interest in the Repudiated Subleases

■ Fleet argues in the alternative that even if this Court finds that the Agreement does not secure the entire loan, Fleet is entitled to liquidate the U.S. Treasury Note collateral to the extent of the default under the subleases. Fleet contends that the perfected security interest, even if interpreted as securing only the subleases, remains in effect regardless of the repudiation of the subleases.

The Court finds that argument to be without merit. Section 3 of the Agreement provides that:

**3.** The "Lease" is defined in the Agreement as the subleases.

Upon payment and performance in full of the Obligations, [Fleet] shall release its security interest hereunder, and will deliver to [the Bank] the [Treasury Notes]....

As noted above, the obligations at issue are limited to the Bank's obligations to Fleet under the subleases. Those obligations were fully paid by FDIC, as receiver for the Bank, at the time it repudiated the subleases, thus terminating Fleet's security interest in the collateral.

■ Pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(e)(1), FDIC had the authority to repudiate the subleases to which the Bank was a party. The repudiation was properly made within sixty days of FDIC's appointment as receiver, which is a "reasonable period" within § 1821(e)(2). *See, RTC v. CedarMinn Bldg. Ltd.,* 956 F.2d 1446, 1455 n. 13 (8th Cir.1992). Section 1821(e)(4)(A) of FIRREA further provides that FDIC:

... shall not be liable for any damages (other than damages determined pursuant to subparagraph (B)) for the disaffirmance or repudiation of such lease.

Subsection (e)(4)(B) states, in relevant part, that the lessor under a repudiated lease, in this case Fleet, shall:

(i) be entitled to the contractual rent accruing before the later of the date—

(I) the notice of disaffirmance or repudiation is mailed; or

(II) the disaffirmance or repudiation becomes effective ...

(ii) have no claim for damages under any acceleration clause or other penalty provision in the lease ...

Under the provisions of FIRREA, therefore, Fleet was entitled to contractual rent accrued to July 31, 1991, the effective date of the repudiation. As all such rent was paid in full, the performance and payment obligations of the subleases were satisfied and, as stated above, Fleet was required under the Agreement to release and return the collateral to FDIC.

Fleet contends that 12 U.S.C. § 1821(e)(11) prohibits FDIC from avoiding Fleet's legally enforceable security interest in the U.S. Treasury Notes. That section provides, in part, that:

no provision of this subsection shall be construed as permitting the avoidance of any legally enforceable or perfected security interest in any of the assets of any depository institution ...

However, Fleet fails to recognize that the security interest it once held in the U.S. Treasury Notes was terminated upon payment and performance by FDIC of the obligations under the subleases.

Fleet further contends that to allow FDIC to nullify the security interest by repudiating the subleases would qualify as a taking of private property without just compensation in contravention to the Fifth Amendment of the United States Constitution. However, as FDIC explained in its memoranda, recent federal decisions have specifically addressed a lessor's obligation to return collateral securing a lease after the lease is repudiated and have held the provisions of § 1821(e) to be constitutional.[4] *See, e.g., FDIC v. Cobblestone Corp.,* 1992 W.L. 333961 at 3–4 (D.Mass., Oct. 28, 1992) (provisions of § 1821(e) limiting damages are constitutional); *LB Credit Corp. v. RTC,* 796 F.Supp. 358 (N.D.Ill.1992) (repudiation of a lease pursuant to section 1821(e)(1) of FIRREA does not constitute a taking of private property for public use without just compensation or due process in violation of the Fifth Amendment); *Unisys Finance Corp. v. RTC,* 979 F.2d 609 (7th Cir.1992).

After the sublease obligations were fully satisfied and the subleases were repudiated, Fleet no longer had a security interest in the collateral. Therefore, pursuant to the terms of the Agreement, the collateral must be returned to FDIC.

Finally, Fleet argues that it should at least be entitled to apply the interest income from the collateral to the loss resulting from the defaulted loan obligation. Once again, how-

---

4. A few of the relevant cases involve the Resolution Trust Corporation ("RTC"), however since RTC and FDIC have the same authority under 12

U.S.C. § 1821(e), the decisions apply to the FDIC with equal force. *See,* 12 U.S.C. § 1441a(b)(4).

ever, its argument fails. As described above, the collateral was not intended to cover the loan obligations of the Realty Trust and there was no default on the subleases.

## ORDER

For the foregoing reasons, it is hereby ordered that:

1) Fleet's motion for summary judgment is **DENIED;**

2) FDIC's motion for summary judgment is **ALLOWED,** and

3) Fleet shall return to FDIC the relevant collateral, to wit, the U.S. Treasury Notes, of which it is in possession.

So ordered.