Hyaire v. FDIC                    CV-93-274-SD  01/05/95

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Hyaire


    v.                                    Civil No. 93-274-SD


Federal Deposit Insurance
 Corporation as Receiver for
 Numerica Savings Bank;
Shawmut Bank NH, f/k/a
 New Dartmouth Bank


O R D E R


    In this civil action, Hyaire, a New Hampshire general
partnership, asserts breach of lease claims against defendants
Federal Deposit Insurance Corporation as Receiver for Numerica
Savings Bank (FDIC) and Shawmut Bank NH, formerly known as New
Dartmouth Bank (Shawmut).  Presently before the court is FDIC's
motion for summary judgment on Counts I and II of Hyaire's Second
Amended Complaint, both of which assert that FDIC failed to
repudiate a lease between Hyaire and Numerica within a reasonable
period of time under 12 U.S.C. § 1821(e)(2).  Also before the
court is Shawmut's motion to dismiss Count III under Rule
12(b)(6), Fed. R. Civ. P.  Plaintiff objects to both motions.

Background

On or about July 14, 1987, Hyaire and Numerica Savings Bank entered into a lease agreement whereby Numerica agreed to lease certain property owned by Hyaire on the corner of Mast Road and Daniel Plummer Road in Goffstown, New Hampshire (the Mast Road property). Said property was used by Numerica as a branch bank location.

On October 10, 1991, the Office of Thrift Supervision appointed FDIC as receiver for Numerica and six other New Hampshire banks. On the same day, FDIC, both in its corporate capacity and in its capacity as receiver for Numerica, entered into a Purchase and Assumption Agreement (P&A) with New Dartmouth Bank (NDB) under which NDB acquired certain Numerica assets and liabilities. See P&A (attached as Exhibit D to FDIC's motion). Section 4.6(b) of the P&A states,

> The Receiver hereby grants to the Assuming Bank an exclusive option for the period of ninety (90) days commencing on the Commencement Date to cause the Receiver to assign to the Assuming Bank any or all lease agreements for leased Bank Premises, if any, which have been continuously occupied by the Assuming Bank from Bank Closing to the date of its exercise of such option, to the extent that such lease agreements can be assigned; provided, that the exercise of this option with respect to any lease must be as to all premises subject to such lease. If an assignment cannot be made of any such lease agreements, the Receiver may, in its discretion, enter into sublease agreements

> with the Assuming Bank containing the same
> terms and conditions provided under existing
> lease agreements for such leased Bank
> Premises.  The Assuming Bank shall give
> written notice to the Receiver within the
> option period of its intent regarding
> acceptance or non-acceptance (or sublease) of
> any or all lease agreements.  The Assuming
> Bank hereby agrees to assume all leases
> assigned pursuant to this Section 4.6 and to
> enter into subleases provided for in this
> Section 4.6.

The lease agreement entered into between Hyaire and Numerica for the Mast Road property was one of the leases NDB could elect to take assignment of under section 4.6(b).

By letter dated November 19, 1991, FDIC reminded NDB of its options under section 4.6(b), and also requested, under section 4.6(f) of the P&A, that NDB make monthly lease payments for bank premises leased by the former banks (in this case, Numerica) to the appropriate third parties rather than to the Receiver. Letter from Jan Simpson, FDIC Liquidation Assistant, to Daniel P. Gobin, Vice President, Administration, NDB (attached as Exhibit G to FDIC's motion).  The letter further required NDB to include with said payments a statement indicating that "New Dartmouth Bank is acting as agent for the Federal Deposit Insurance Corporation as receiver for" the former bank and that the payment "in no way constitutes ratification of the contract." Id. at 2.

By letter dated January 8, 1992, Gobin notified FDIC that,

3

pursuant to section 4.6(b) of the P&A, NDB was exercising its option "not to accept an assignment, or sublease, of the lease between the former Bank #4408 [Numerica] and Hyaire General Partners for the leased Bank Premises located at 558 Mast Rd., Goffstown, NH." Letter from Gobin to FDIC, Receiver of Numerica (attached as Exhibit I to FDIC's motion and as Exhibit B to Hyaire's objection).

FDIC, in turn, notified Hyaire by letter dated February 14, 1992, that "the Receiver has elected to disaffirm the referenced contract[1] as of April 30, 1992, to the full extent, if any, that it represents an enforceable obligation of the [Numerica Savings] Bank and the Receiver as successor thereto." Letter from FDIC to Hyaire (attached as Substituted Exhibit M to FDIC's motion).

Prior to notifying FDIC that it was opting not to accept an assignment or sublease of the Mast Road property, NDB expressed its interest in remaining at the Mast Road location in a December 9, 1991, letter to Hyaire. See Letter from Tony Bammarito, AVP-Facilities Management, to Hyaire (attached as Exhibit H to FDIC's motion). The letter further stated, "While New Dartmouth Bank expresses its interest in the property, the negotiating of financial terms and conditions acceptable to both

---

[1]The "referenced contract" is identified in the heading of the letter as "Lease Agreement - 558 Mast Road Goffstown, New Hampshire 03045."

4

parties will be critical in the decision to retain the current premises."[2]  Id.

Hyaire and NDB subsequently entered into negotiations regarding the lease of the Mast Road property.  See Letters attached as Exhibits N and O to FDIC's motion; Affidavit of Gossett W. McRae ¶ 7 (attached to Hyaire's objection).  These negotiations broke down in May of 1992, and by letter dated November 12, 1992, NDB notified Hyaire of its intent to vacate the Mast Road property effective December 15, 1992.  McRae Affidavit ¶ 7; Letter from Bammarito to McRae (Exhibit O).  NDB vacated the Mast Road property on December 15.  McRae Affidavit ¶ 7.  This action followed.

---

[2]In anticipation of working out a new lease for the Mast Road property with Hyaire, NDB arranged to purchase the furniture, fixtures, and equipment located on said premises from FDIC.  See Letter from Gobin to Bob Riley, Section Chief, FDIC (attached as Exhibit J to FDIC's motion); Letter from Riley to Gobin (Exhibit K); Settlement Account Transaction Form (Exhibit L).  In the letter initiating said purchase, the Mast Road property was identified under "[p]remises which were under lease by the former banks that New Dartmouth Bank has formerly notified the FDIC of its intention to vacate, which premises New Dartmouth Bank fully intends to negotiate successor leases for and occupy beyond the April 7, 1992 vacancy date."  Letter from Gobin to Riley at 2 (Exhibit J).

<u>Discussion</u>

A. <u>FDIC's Motion for Summary Judgment</u>

   1. <u>Summary Judgment Standard</u>

Under Rule 56(c), Fed. R. Civ. P., summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

> Summary judgment is a procedure that involves shifting burdens between the moving and the nonmoving parties. Initially, the onus falls upon the moving party to aver "'an absence of evidence to support the nonmoving party's case.'" <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 48 (1st Cir. 1990) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986)). Once the moving party satisfies this requirement, the pendulum swings back to the nonmoving party, who must oppose the motion by presenting facts that show that there is a "genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)) . . . .

<u>LeBlanc v. Great American Ins. Co.</u>, 6 F.3d 836, 841 (1st Cir. 1993), <u>cert. denied</u>, ___ U.S. ___, 114 S. Ct. 1398 (1994).

In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences in the nonmoving party's favor. <u>Anderson</u>, <u>supra</u>, 477 U.S. at 255.

6

2. Count I

Under the Financial Institutions Reform, Recovery and
Enforcement Act of 1989 (FIRREA), Pub. L. No. 101-73, 103 Stat.
183 (codified in scattered sections of 12 U.S.C.), FDIC, as
receiver for Numerica, had the authority to disaffirm or
repudiate any contract or lease (1) to which Numerica was a
party, (2) the performance of which FDIC, in its discretion,
determined to be burdensome, and (3) the disaffirmance of which
FDIC, in its discretion, determined would "promote the orderly
administration of [Numerica's] affairs."  12 U.S.C. § 1821(e)(1).
See also Lawson v. FDIC, 3 F.3d 11, 14 (1st Cir. 1993).  FDIC was
further required to "determine whether or not to exercise the
rights of repudiation . . . within a reasonable period following"
its appointment as a receiver.  12 U.S.C. § 1821(e)(2).

In Count I, Hyaire asserts,

> Despite the notice sent to Hyaire on
> February 14, 1992, the FDIC did not determine
> to disaffirm the Lease as of that date, and
> had no intention of doing so, and in fact the
> FDIC and/or its designee New Dartmouth Bank
> occupied the Leased Premises well after
> April 30, 1992.
> The FDIC did not make a determination to
> repudiate the Lease within a reasonable
> period following its appointment.
> Since the FDIC did not exercise its right
> of repudiation under 12 U.S.C. § 1821(e)
> within a reasonable period, no such right of
> repudiation of the Lease is available to the
> FDIC.  Therefore, §14.1.1 of the Lease
> controls, and Hyaire is entitled to the full

7

> amount of accelerated rent until the
> expiration of the Lease term, along with
> appropriate costs, interest and attorneys'
> fees.

Second Amended Complaint ¶¶ 17-19.

It is undisputed in this action that FDIC notified Hyaire in a letter dated February 14, 1992, that it had elected to disaffirm the lease on the Mast Road property as of April 30, 1992. The evidence submitted by FDIC further shows that FDIC did not occupy the Mast Road property after April 30, 1992. Affidavit of Paula Fierravanti ¶ 11 (attached as Exhibit A to FDIC's motion). However, Hyaire contends that the continued occupancy of the Mast Road property by NDB after April 30, 1992, renders FDIC's repudiation of the lease ineffective. The court finds this argument to be entirely without merit.

The evidence before the court clearly demonstrates that NDB and Hyaire were in the process of negotiating a new lease agreement at the time FDIC's repudiation of the original lease between Hyaire and Numerica became effective. The evidence further shows that after April 30, 1992, NDB continued to occupy the Mast Road property and to pay the monthly rental rate set forth in the original lease as "a gesture of good faith" in its negotiations with Hyaire toward a new lease "which reasonably reflects current market conditions." Letter from Robert P. Keller, President and CEO of NDB to McRae (attached to FDIC's

8

motion as part of Exhibit O).  However, there is no evidence before the court which shows, or even suggests, that FDIC was involved in the lease negotiations between NDB and Hyaire, or that NDB, in attempting to negotiate a new lease with Hyaire, was acting on FDIC's behalf.

On the basis of the evidence before it, the court finds and rules that FDIC's February 14, 1992, letter to Hyaire constitutes an effective repudiation of the lease in question under 12 U.S.C. § 1821(e)(1).  The court further finds that the evidence before it is insufficient to support a finding that said repudiation was somehow altered or rendered ineffective by the subsequent conduct of FDIC or NDB.  FDIC's motion for summary judgment is therefore granted as to Count I.


### 3.  Count II

In Count II, Hyaire asserts,

> If the FDIC's notice date of February 14, 1992 is taken to be the effective date of its determination to repudiate the Lease, that date also is beyond a reasonable time following the FDIC's appointment provided in 12 U.S.C. § 1821(e)(2).

Second Amended Complaint ¶ 21.  Therefore, Hyaire maintains, FDIC had no right of repudiation and section 14.1.1 of the lease controls.  Id. ¶ 22.

FIRREA does not define what constitutes "a reasonable period" under section 1821(e)(2).  Instead, "[t]he amount of time

9

that is reasonable must be determined according to the circumstances of each case." RTC v. Cedarminn Bldg. Ltd. Partnership, 956 F.2d 1446, 1455 (8th Cir.), cert. denied, ___ U.S. ___, 113 S. Ct. 94 (1992). See also Monument Square Assocs., Inc. v. RTC, 792 F. Supp. 874, 878 (D. Mass. 1991) (whether the receiver "acted within a reasonable period should be determined by looking at the circumstances of each case").[3]

On October 10, 1991, FDIC was appointed as receiver for seven New Hampshire banks, including Numerica. "The simultaneous closing of these seven banks was one of the largest bank closings ever undertaken at one time by the FDIC." Affidavit of Paula Fierravanti ¶ 4 (attached as Exhibit A to FDIC's motion).

FDIC Non-Asset Litigation Specialist Paula Fierravanti indicates that in larger bank closings

> (such as the closing of Numerica and other banks on October 10, 1991 in New Hampshire), it has been the practice of the FDIC to use a Purchase and Assumption Agreement under which an assuming bank has a ninety-day option period, with respect to any of the agreements under which the failed bank(s) leased bank premises, to take either an assignment of the lease or, alternatively, a sublease containing the same terms and conditions.

---

[3]The court notes that "Congress initially proposed limiting the reasonable period to 90 days, see H.R. Rep. No. 54(I), 101st Cong., 1st Sess. 331 (1989), reprinted in 1989 U.S.C.C.A.N. 86, 127, but subsequently eliminated that provision." Monument Square, supra, 792 F. Supp. at 878 n.8. See also Cedarminn, supra, 956 F.2d at 1455 n.13; RTC v. United Trust Fund, Inc., 775 F. Supp. 1465, 1468 (S.D. Fla. 1991).

10

Fierravanti Affidavit ¶ 6. Under the terms of the October 10, 1991, P&A, NDB was given such an option with respect to the lease on the Mast Road property. See P&A § 4.6(b).

By letter dated January 8, 1992, NDB notified FDIC of its decision not to accept an assignment or sublease of the lease on the Mast Road property. Approximately five weeks later, FDIC notified Hyaire of its decision to disaffirm said lease under 12 U.S.C. § 1821(e)(1). Accordingly, approximately four months elapsed between FDIC's appointment as receiver for Numerica and its disaffirmance of Numerica's lease on the Mast Road property.

Hyaire contends that, despite these undisputed facts, summary judgment is inappropriate because "[t]he important facts, such as what investigation FDIC-Receiver made into Hyaire's Lease, what calculation or weighing of factors it made with respect to whether Hyaire's Lease was burdensome, and most importantly, how much time the investigation with respect to Hyaire's Lease took, are conspicuously absent from the record." Plaintiff's Objection at 8. However, the determination as to whether a lease is "burdensome" and whether disaffirmance of the lease would "promote the orderly administration" of a failed bank's affairs are matters left to the FDIC's discretion under section 1821(e)(1). Here, the letters of negotiation between Hyaire and NDB, discussed infra at pp. 4-5, reveal a declining real estate market and a corresponding drop in property rental

rates.  This evidence shows that performance of the lease in question, which was based on rental rates higher than the current market rates, would have been burdensome to FDIC.  See, e.g., 1185 Ave. of Americas Assocs. v. RTC, 22 F.3d 494, 498 (2d Cir. 1994).  Hyaire has submitted no other evidence showing that FDIC's determination to disaffirm the lease was an abuse of its discretion under section 1821(e)(1) or that the four months it took FDIC to make said determination was an unreasonable period of time.

Under the circumstances of this case, the court finds and rules that FDIC's decision to disaffirm the lease on the Mast Road property was made within a reasonable period of time.  See, e.g., 1185 Ave. of Americas Assocs., supra, 22 F.3d at 498 (where assuming bank had been given 90-day option to accept assignment of lease, it was not unreasonable for RTC to delay decision to repudiate the lease in question until the end of that time period); Hackel v. FDIC, 858 F. Supp. 289, 291 n.5 (D. Mass. 1994) (four and one-half months between appointment and disaffirmance held to be reasonable where plaintiff failed to introduce evidence to show that said period of time was unreasonable under the circumstances); Fleet Nat'l Bank v. FDIC, 843 F. Supp. 787, 791 (D. Mass. 1994) (repudiation of lease 60 days after FDIC's appointment as receiver not unreasonable); Monument Square, supra, 792 F. Supp. at 879 (three and one-half

12

months between appointment as receiver and disaffirmance of lease not unreasonable).  Therefore, FDIC is not bound by the terms of the lease, and Hyaire's damages are limited under 12 U.S.C. § 1821(e)(4)(A)-(B).[4]

FDIC's motion for summary judgment is granted as to Count II.

## B.   Shawmut's Motion to Dismiss

Shawmut moves to dismiss Count III of Hyaire's Second Amended Complaint under Rule 12(b)(6), Fed. R. Civ. P.  In opposition to said motion, Hyaire submits a memorandum that makes reference to several of the documents attached to FDIC's motion for summary judgment and is itself accompanied by matters outside the pleading.  Accordingly, pursuant to Rule 12(b) Shawmut's motion to dismiss is hereby converted to one for summary judgment.  The parties shall have until February 6, 1995, to file any additional materials in support of or in opposition to Shawmut's motion.

## Conclusion

For the reasons set forth herein, FDIC's motion for summary

---

[4]Section 1821(e)(4) limits FDIC's liability to Hyaire for damages to "the contractual rent accruing before the later of the date--(I) the notice of disaffirmance or repudiation is mailed; or (II) the disaffirmance or repudiation becomes effective . . . ."

judgment on Counts I and II (document 26) is granted. Shawmut's motion to dismiss (document 27) will be treated as a motion for summary judgment. The parties shall file all additional materials in support of or in opposition to Shawmut's motion by February 6, 1995.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

January 5, 1995

cc:   Stephanie A. Bray, Esq.
      Steven E. Hengen, Esq.
      Joseph F. Shea, Esq.