**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for HomeFed Bank, F.S.B., Plaintiff–Appellee,**

v.

**EDWARD POST MAHONEY; Jennifer Mahoney; Patricia Gomez; San Diego Trust & Savings Bank; Ralph Curren, Conservator of the Estate of Edward H. Post, Jr.; B. Franklin Mahoney, Jr., deceased; Edward H. Post, Jr.; San Diego Trust and Savings Bank as Co–Trustees under the will of Edward H. Post Jr., deceased and under the decree of distribution entered March 13, 1962; Danielson Trust Company, Defendants–Appellants.**

No. 97–55300.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 4, 1998.

Decided April 1, 1998.

914

Thomas W. Bettles, Post, Kirby, Noonan & Sweat, San Diego, California, for defendant-appellant.

Steven C. Morrison, Morrison & Lespier, L.L.P., Irvine, California, Christopher J. Bellotto, Federal Deposit Insurance Corporation, Washington, DC, for plaintiff-appellee.

Before: PREGERSON, HALL and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Edward Post Mahoney and the other named defendants (the defendants) appeal the judgment on the pleadings given by the district court in favor of the Federal Deposit Insurance Corporation (the FDIC) in its suit for declaratory relief and conversion. The case depends upon the statutory powers of the FDIC as receiver, 12 U.S.C. § 1821(e)(1) and (4), and upon the value to the defendants of the building in dispute according to the lease attached to the pleadings. Observing that the value of the building consists in a permanent structure ownership of which is entirely contingent, we affirm the judgment of the district court.

## FACTS

On January 1, 1962 the defendants leased to Home Federal Savings and Loan Association of San Diego (HomeFed) certain real estate in downtown San Diego adjacent to HomeFed's offices. A two-story office building built in 1913 was on the premises. The lease was for 99 years, ending December 31, 2060. The rent was a minimum of $5,400 per month, adjustable each January in light of the cost of living index and of the appraised value of the land exclusive of "buildings and improvements located thereon." By Article IV, section 2 of the lease HomeFed was given "the privilege" of removing or demol-

ishing the building existing on the land "for the purpose of erecting in place thereof a new building or buildings which shall cost not less than twice the most recently determined Appraised Value of the land only"; prior to such removal HomeFed was to give the defendants a surety bond to secure the removal of the old building and construction of the new, free of liens, or to deposit government bonds with a bank as trustee for the same purpose. By Article XI of the lease HomeFed was given, upon the expiration of the lease in 2060, the right and option to purchase the property "for the fair market value of the leased premises as vacant and unimproved land as of the date one year prior to the expiration of the term of this lease."

By amendment of July 27, 1987 the option of a surety bond covering liens for removal of the building was eliminated, leaving as the only requirement that of depositing government bonds; a surety bond was still required covering liens generated by the construction of a new building. It was further provided that "any construction pursuant to this provision shall be commenced on or before December 31, 2030." Following this amendment in November 1987, HomeFed razed the old building and subsequently deposited $2.8 million in U.S. Treasury Bonds with a bank (the Trustee). By the time this litigation began, the value of the bonds had grown to $3.2 million.

On July 6, 1992, the Resolution Trust Corporation (RTC) became the receiver of HomeFed. On February 1, 1994, the RTC terminated and repudiated the lease. On April 1, 1994, the RTC demanded return of the bonds. The defendants refused to authorize the return.

## PROCEEDINGS

On April 12, 1994 the RTC brought this suit against the defendants, seeking a declaration that the $3.2 million in bonds held by the Trustee belonged to it as the receiver of HomeFed and alleging conversion of this amount by the defendants who refused to agree to release of the bonds.

The defendants answered, contending that under the lease HomeFed became obligated to construct a new building and that the RTC had no power to repudiate what the defendants characterized as a perfected security interest securing this obligation. The defendants also alleged encroachments by the RTC.

The RTC moved for judgment on the pleadings. The district court ruled that as the lease did not require HomeFed to build a new building before 2030 the construction of the building was not "rent" due as of the date of the appointment of the receiver; therefore the RTC was empowered by 12 U.S.C. § 1821(e)(1) to repudiate the lease without building the new building; and that as the defendants had no claim they could not rely on any security interest. The district court also rejected the contention that there was a taking requiring compensation under the Fifth Amendment.

The RTC agreed to entry of judgment against it of $55,000 on the encroachment claims; the court entered judgment for the RTC for the $3.2 million in bonds plus interest. The FDIC succeeded to the RTC as receiver in December of 1995.

The defendants appeal.

## ANALYSIS

The defendants contend that, because the lease includes a rather special kind of obligation relating to the building of a new building, we should treat the lease as a contract. All leases, however, are a species of contract. *RTC v. Diamond,* 45 F.3d 665, 672 (2d Cir.1995). Congress has chosen to treat every lease under the provisions of 12 U.S.C. § 1821(e)(4).

The terms of the lease are undisputed and are common ground for judgment on the pleadings.

Assuming arguendo that there was an obligation to build a new building, fulfillment of the obligation by the terms of the lease could not have increased the rent. Only when the lease ended in 2060 could the new building have had a value for the defendants. But that value was zero if the RTC exercised its option to acquire the entire property for the value of the unimproved land. Only if the RTC did not exercise this option could

there be anything for the defendants. This completely contingent value is not rent due at the time of the receiver's appointment— the only kind of rent the federal receiver is bound to pay. 12 U.S.C. § 1821(e)(4)(B)(iii).

The security interest appears to secure only a building free from liens, but even if the lease is read as the defendants read it to secure an obligation to build, this obligation being set aside there is nothing to be secured. "You must have a claim before you can look to the collateral for its repayment." *Unisys Finance Corp. v. RTC,* 979 F.2d 609, 611 (7th Cir.1992).

By the same token there is no taking requiring compensation under the Fifth Amendment. "If the claim disappears— poof! the lien is gone." *Id.* No property is taken, no compensation is owed.

**AFFIRMED.**