**LB CREDIT CORPORATION,
a California Corporation,
Plaintiff,**

v.

**RESOLUTION TRUST CORPORATION
as Receiver for Concordia Federal
Bank for Savings, Defendant.**

**No. 91 C 4379.**

United States District Court,
N.D. Illinois, E.D.

Aug. 10, 1992.

---

Michael Lewis Weissman, McBride, Baker & Coles, John Donovan Lien, Joan Marie G. Kubalanza, Bobby Dean Hines, Jr., Foley & Lardner, Chicago, Ill., for plaintiff.

Michael M. Mulder, Annette Ruth Appell, Meites, Frackman & Mulder, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

LINDBERG, District Judge.

On June 10, 1987, Concordia Federal Bank for Savings ("Concordia") and Unisys Financial Corporation ("Unisys") entered into a lease agreement pursuant to which Unisys leased data processing equipment to Concordia. Concordia pledged certain securities as security for performance of its obligations under the lease. Unisys subsequently sold and assigned its rights under the lease to Wells Fargo Leasing Company ("WFLC"), which changed its name to LB Credit Corporation ("LB Credit").

On May 29, 1990, the Office of Thrift Supervision declared Concordia insolvent and appointed the Resolution Trust Corporation ("RTC") as receiver. On August 23, 1990, the RTC repudiated Concordia's lease with LB Credit pursuant to 12 U.S.C. § 1821(e)(1) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). Section 2[11](e)(1) of FIRREA permits a receiver to repudiate contracts or leases which it finds burdensome or a hinderance to the administration of the RTC's affairs. At the time of the repudiation, all rental payments under the lease were current.

On October 11, 1990, LB Credit took possession of the equipment covered by the lease and enforced its security interest in the equipment by a private sale pursuant to section 9–504 of the Uniform Commercial Code. LB Credit subsequently filed a claim with Concordia for the future rental payments owed under the lease less the money received from the private sale. On May 13, 1991, the RTC disallowed LB Credit's claim. LB Credit subsequently brought a two-count complaint seeking damages in excess of $591,165.06 for repudiation of the lease agreement and a declaration that the pledged securities would be available to satisfy Concordia's outstanding obligations to LB Credit.

Defendant filed a motion for summary judgment, contending that FIRREA limits the receiver's liability for lease repudiation to the unpaid back rent and that no genu-

ine issue of material fact exists as to whether all rental payments were current at the time of repudiation. Plaintiff then amended its complaint to include an unconstitutional taking and due process claim. Plaintiff alleges that the RTC's retroactive application of FIRREA is an unconstitutional taking of private property [the pledged securities] for public use in violation of the Fifth Amendment. Because the parties have filed supplemental briefs addressing the additional claim in the context of the motion for summary judgment, the court applies the summary judgment motion to the amended complaint.

 To prevail on a motion for summary judgment, the movant must show that no genuine issue of material fact is in dispute and that it is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Where genuine issues of material fact exist, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Because the parties are in agreement as to the essential facts of this case,[1] the court must decide whether defendant is entitled to judgment as a matter of law.

This case involves the interpretation of section 2[11](e) of FIRREA which permits the RTC to repudiate leases by banks in receivership which it finds burdensome or whose repudiation will promote the orderly administration of the bank's affairs. 12 U.S.C. § 1821(e)(1). According to section 1821(e)(4), a receiver that repudiates a lease is neither liable for any damages for its repudiation nor liable for damages under any acceleration clause in the lease; the receiver is liable only for unpaid lease payments owed prior to the date of repudiation.[2] 12 U.S.C. § 1821(e)(4)(A) and (B). Because the rental payments under the lease were current, defendant argues that LB Credit has suffered no compensable damages and has no claim to the pledged securities. In response, plaintiff contends that section 1821(e)(11)[3] precludes the RTC from avoiding LB Credit's perfected security interest in the pledged securities.

 When interpreting a statute, the court should look to "the provisions of the whole law and to its object and policy", rather than emphasizing a single clause. *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 220–21, 106 S.Ct. 2485, 2493–94, 91 L.Ed.2d 174 (1986), quoting *Mastro Plastics Corp. v. N.L.R.B.*, 350 U.S. 270, 285, 76 S.Ct. 349, 359, 100 L.Ed. 309 (1956). Judge Grady of this court has interpreted the statutory provisions in question in a similar case involving many of the same

1. In plaintiff's original response to defendant's motion for summary judgment, plaintiff alleged there were material issues of fact as to whether defendant wrongfully repudiated Concordia's lease with LBCC. The alleged material issues of fact were: 1) whether the lease was burdensome; 2) whether the lease was a hinderance to the orderly administration of the RTC's affairs; 3) whether the RTC repudiated the lease within a reasonable time after it was appointed as receiver; and 4) whether the RTC abused its discretion when it repudiated the lease. The court granted plaintiff's emergency motion for discovery on these issues before ruling on the motion for summary judgment. However, in its supplemental response to defendant's motion for summary judgment, plaintiff failed to address what discovery had revealed regarding these alleged material issues of fact. The court therefore agrees with the RTC that plaintiff has abandoned its arguments on these issues.

2. Section 1821(e)(4)(A) provides that when the "receiver disaffirms or repudiates a lease under which the insured depository institution was the lessee, the ... receiver shall not be liable for any damages ... for the disaffirmance or repudiation of such lease." 12 U.S.C. § 1821(e)(4)(A). Section 1821(e)(4)(B) provides that "[n]otwithstanding subparagraph (A), the lessor under a lease ... shall—(i) be entitled to the contractual rent accruing before ... (I) the notice of disaffirmance or repudiation is mailed; or (II) the disaffirmance or repudiation becomes effective.... [and] (ii) have no claim for damages under any acceleration clause or other penalty provision in the lease."

3. Section 1821(e)(11) provides that "[n]o provision of this subsection shall be construed as permitting the avoidance of any legally enforceable or perfected security interest in any of the assets of any depository institution except where such an interest is taken in contemplation of the institution's insolvency or with the intent to hinder, delay or defraud the institution or the creditors of such institution." 12 U.S.C. § 1821(e)(11).

parties. *First National Bank v. Unisys Finance Corp.*, 779 F.Supp. 85 (N.D.Ill. 1991). In *First National Bank*, Unisys brought an action against the RTC to recover future payments from a repudiated lease agreement with Concordia. *Id.* at 85–86. Unisys argued that it held a perfected security interest in the pledged securities which could not be defeated by the RTC's repudiation of the lease. Judge Grady held that FIRREA allows the receiver to repudiate secured leases and preclude payment of future damages from the security. Judge Grady reasoned as follows:

"[T]he securities were pledged 'to secure the payment and performance of all of [Concordia's] obligations under the lease....' Complaint (91 C 1884), Exhibit 'B'. When RTC repudiated the lease on August 23, 1990, it had performed all of its lease obligations up to that point. Had RTC been in default at the time it exercised its power to disaffirm the lease, the security agreement would have provided for payment of any arrearage. As it stands, however, there was no default to secure. Plaintiff's interpretation of § 1821(e)(11) would permit the recovery of future rent payments in contravention of the express limitation of damages in § 1821(e)(4)(B)."

*First National Bank*, 779 F.Supp. at 87. This court agrees with Judge Grady's reasoning. To adopt LB Credit's interpretation of section 1821(e)(11) and permit recovery of the pledged collateral to satisfy future rent payments would nullify section 1821(e)(4)(B), which limits damages to rent payments accrued prior to repudiation and prohibits recovery of damages under any acceleration clause or other penalty provision of the lease. Section 1821(e)(11) protects a creditor's security interest, but only to the extent a creditor has a claim under FIRREA. Plaintiff's interpretation of section 1821(e)(11) ignores the policy behind the Act and "the unprecedented costs of dealing with the hundreds of insolvent thrifts and the orderly disposition of the assets of these failed institutions." H.Rep. No. 101–54(I), 101st Cong., 1st Sess. 308 (1989), U.S.Code Cong. & Admin.News pp. 86, 104.

Plaintiff argues that *First National Bank* does not control this case because the decision failed to address the constitutional issues arising from retroactive application of FIRREA. Plaintiff argues that retroactive application of FIRREA constitutes a taking of private property for public use without just compensation and due process in violation of the Fifth Amendment. In support of this argument, plaintiff attempts to analogize this case to decisions which held that retroactive application of the Bankruptcy Code violated the Fifth Amendment. See *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), rehearing denied 296 U.S. 661, 56 S.Ct. 82, 80 L.Ed. 471 (1936); *United States v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), affirming *Rodrock v. Security Industrial Bank*, 642 F.2d 1193 (10th Cir.1981).

The court finds these arguments unpersuasive. The Seventh Circuit and other circuits have consistently applied FIRREA retroactively. See *Greenberg v. Comptroller of the Currency*, 938 F.2d 8, 11 (2nd Cir.1991); *Federal Deposit Ins. Corp. v. Wright*, 942 F.2d 1089, 1095 (7th Cir.1991); *North Arkansas Medical Center v. Barrett*, 962 F.2d 780, 789 (8th Cir.1992). The Supreme Court established a presumption of retroactivity for legislative enactments and instructed courts "to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. Richmond School Board*, 416 U.S. 696, 711 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). The court adopts the *Wright* court's retroactivity analysis in this case. In *Wright*, the Seventh Circuit determined that a "retroactive application of FIRREA would further congressional intent." The Seventh Circuit found nothing in the legislative history or in the statute itself to indicate that FIRREA should not be applied retroactively. *Id.* In fact, the court determined that a retroactive application would not result in manifest injustice but

assist in "dealing with the mounting bank failures in this country." *Id.* at 1096.

The bankruptcy cases cited by LB Credit to show that the RTC's repudiation of the lease was an unconstitutional taking are distinguishable. These cases involved government interference with security interests for money that had already been loaned. In *Louisville Joint Stock Land Bank, supra,* the bank obtained a mortgage to secure repayment of a loan. The Supreme Court determined that retroactive application of the bankruptcy statute, which would have taken away the bank's mortgage rights, resulted in an unconstitutional taking of property. In *Security Industrial Bank, supra,* creditors had loaned a debtor money and had obtained and perfected a lien on the debtor's household furnishings and appliances. The Supreme Court affirmed the Tenth Circuit's holding that retroactive application of the Bankruptcy Reform Act of 1978, which invalidated such liens acquired prior to the enactment date, violated the takings clause of the Fifth Amendment.

 In the present case, the RTC was not in debt to LB Credit. No rent was in arrearage when the RTC repudiated the lease. Had any back rent been owed to LB Credit prior to the lease's repudiation, plaintiff would have had a claim under FIRREA, which could have been satisfied from the pledged securities. The RTC has not interfered with LB Credit's interest in the pledged securities. It is the claim which defines the extent of the security interest; because LB Credit has no claim, LB Credit has no interest. When the RTC repudiated the lease, LB Credit lost its right to future payments under the lease. LB Credit has presented no authority that the loss of future profits constitutes an unconstitutional taking. The Supreme Court has held that the disruption of private expectations does not constitute a taking. *Penn Centr. Transp. Co. v. New York City,* 438 U.S. 104, 131, 98 S.Ct. 2646, 2663, 57 L.Ed.2d 631 (1978); *Omnia Commercial Co. v. United States,* 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773 (1923) (no compensation for consequential damages); *Fos-*

*ter v. United States,* 2 Cl.Ct. 426, 445 n. 7 (1983) (the general rule is that there is no compensation for frustrated contracts or the loss of future income). The RTC's repudiation of the lease pursuant to section 2[11](e)(1) of FIRREA does not constitute a taking of private property for public use without just compensation or due process in violation of the Fifth Amendment. Defendant's motion for summary judgment is granted.

ORDERED: Defendant's motion for summary judgment is granted. The Clerk is ordered to enter judgment for defendant and against plaintiff on a separate document pursuant to FRCP 58.