RESOLUTION TRUST CORPORATION, as Receiver for Fulton Federal Savings and Loan Association, Plaintiff, Counter-defendant, Appellee,

v.

FORD MOTOR CREDIT CORPORATION, United States Leasing International, Inc., and United States Leasing Corporation, Defendants, Counter-claimants, Appellants.

No. 93–8906.

United States Court of Appeals, Eleventh Circuit.

Sept. 1, 1994.

Rehearing Denied Oct. 14, 1994.

Stephen H. Block, Atlanta, GA, for appellants.

George Patrick Watson and Christopher Paul Galanek, Powell, Goldstein, Frazer & Murphy, Atlanta, GA, for appellee.

---

* Honorable W. Harold Albritton, III, District Judge for the Middle District of Alabama, sitting by designation.

1. Burroughs later became known as Unisys Financial Corporation.

Before ANDERSON and BIRCH, Circuit Judges, and ALBRITTON,* District Judge.

ANDERSON, Circuit Judge:

This case involves the interpretation and application of the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) regarding the termination of a lease. Under the agreement here at issue, Fulton Federal Savings and Loan Association ("Fulton") leased various computer equipment from Burroughs Financing Corporation.[1] To secure Fulton's obligations under the original master lease and additional lease schedules, Burroughs held a perfected security interest in assets pledged with the Federal Home Loan Bank of Atlanta (FHLB) by Fulton. The leases were executed before FIRREA became effective. Burroughs assigned the leases to Ford Motor Credit Corporation.[2] Fulton Federal eventually fell victim to adverse circumstances, which led to the appointment of the Resolution Trust Corporation (RTC) as receiver.

Acting as receiver, the RTC repudiated the leases under the relevant provisions of FIRREA. The RTC contends that, upon repudiation, the statute provides only for the payment of rents accrued as of the date of repudiation. Ford, on the other hand, claims that it is entitled to collect damages in excess of accrued rent against the collateral in which it has a valid security interest. The RTC filed a declaratory judgment action regarding the ownership of the assets. Both parties moved for summary judgment; the district court ruled in favor of the RTC. Ford now appeals.

■ FIRREA allows the RTC as receiver to repudiate any lease to which the failed institution was a party if, in the RTC's judgment, the performance of the lease would be burdensome and the repudiation would pro-

2. United States Leasing International is acting as agent for Ford Motor Credit. For convenience, we will refer to the defendants collectively as "Ford."

mote the orderly administration of the institution's affairs. 12 U.S.C. § 1821(e)(1). The RTC is liable only for damages determined pursuant to statute. *Id.* § 1821(e)(4)(A). The damage provisions are set out in Section 1821(e)(4)(B), and can be summarized as follows: (i) the lessor is entitled to the contractual rent that has accrued on the date the notice of repudiation is mailed or the repudiation's effective date, whichever comes later; (ii) the lessor has no claim for damages under any acceleration clause or other penalty provision in the lease; and (iii) the lessor has a claim for other unpaid rent pursuant to provisions not relevant in the instant case.[3] It is undisputed that the RTC has returned the leased equipment and has paid Ford the amount allowed under the first damage provision, *i.e.* accrued contractual rent.

Ford claims that it is entitled to recover additional damages, in excess of accrued rent,[4] against the pledged collateral. This argument is premised on Ford's proposition that Section 1821(e)(4) serves only to limit the RTC's liability upon repudiation of a lease, and does not block recovery against property in which the lessor has a perfected security interest. This proposition, however, is clearly contrary to the plain language of the statute. Section 1821(e)(4)(B) states that a lessor *shall have no claim* under any acceleration or penalty clause. It does not state,

as Ford apparently suggests, that a lessor has no claim *against the RTC* under an acceleration clause, but may have such a claim against any pledged collateral. Ford simply cannot recover future rents from any party or against any property.

■ The calculation of damages sought by Ford rests on an acceleration clause. As described by counsel at oral argument, the calculation is based on future rent, minus a "set interest factor" and reduced to present value (adding allowances for late charges, property taxes, and the like). Despite the adjustments, this calculation uses future rent as its basis, and therefore constitutes the type of damages based on an acceleration clause that Section 1821(e)(4)(B)(ii) prohibits. Ford's damage calculation directly conflicts with statutory language and therefore is without merit.[5]

■ Ford argues that disallowing recovery against the collateral in excess of accrued rent violates 12 U.S.C. § 1821(e)(11), which states that no portion of Section 1821(e) shall be construed to enable the avoidance of a legally enforceable or perfected security interest. As is the case with Ford's proffered interpretation of 1821(e)(4), its argument regarding 1821(e)(11) is based on a misunderstanding of the principles involved. Section 1821(e)(11) assures creditors and others with

---

3. Section 1821(e)(4) reads, in its entirety:

> **(4) Leases under which the institution is the lessee**
>
> **(A) In general**
> If the conservator or receiver disaffirms or repudiates a lease under which the insured depository institution was the lessee, the conservator or receiver shall not be liable for any damages (other than damages determined pursuant to subparagraph (B)) for the disaffirmance or repudiation of such lease.
>
> **(B) Payment of rent**
> Notwithstanding subparagraph (A), the lessor under a lease to which such subparagraph applies shall—
> (i) be entitled to the contractual rent accruing before the later of the date—
> (I) the notice of disaffirmance or repudiation is mailed; or
> (II) the disaffirmance or repudiation becomes effective, unless the lessor is in default or breach of the terms of the lease;
> (ii) have no claim for damages under any acceleration clause or other penalty provision in the lease; and

> (iii) have a claim for any unpaid rent, subject to all appropriate offsets and defenses, due as of the date of the appointment which shall be paid in accordance with this subsection and subsection (i) of this section.

12 U.S.C.A. § 1821(e)(4) (1989 & Supp.1994).

4. This raises the question of what basis Ford uses to calculate its claimed damages. As we explain *infra*, the claimed damages rest on an acceleration of future rent, which is expressly prohibited under Section 1821(e)(4)(B).

5. Ford proposed no alternate calculation of damages; for example, it offers no calculation stating that the true rental value of the equipment in the early years of the lease exceeded the rent actually paid by Fulton and that the shortfall was to be made up by future rent payments, and secured by the pledged collateral. We therefore do not consider the merits of such an argument, or whether actual direct compensatory damages in excess of accrued rent may ever be recovered under Section 1821(e)(4).

valid security interests that their valid secured claims will be recognized. But a secured creditor only has rights in the collateral equal to the amount of the creditor's claim. Once that claim is satisfied, the lien is of no further consequence. *See Unisys Finance Corp. v. RTC,* 979 F.2d 609, 611–12 (7th Cir.1992). As we have explained, Ford's claim is limited to accrued rent. Since it is undisputed that no accrued rent is owed, Ford no longer has a claim, and therefore cannot have any enforceable lien.

■ The appellant next maintains that application of FIRREA to the instant leases would constitute an unauthorized retroactive application of the statute, because the leases were executed well before FIRREA's effective date. The Supreme Court recently has provided clarification of the law regarding retroactivity in *Landgraf v. USI Film Products,* —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Under *Landgraf,* the characterization of a law's application as retroactive or prospective does not depend solely upon when the events giving rise to a lawsuit occurred. Rather, a statute has retroactive effect if its application "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1505. Therefore, the prior banking law is relevant in determining whether the application of a new statute is truly retroactive. Under pre-FIRREA law, post-repudiation rent could not be recovered because such claims were not provable. *See, e.g., Bayshore Executive Plaza Partnership v. FDIC,* 750 F.Supp. 507, 509 n. 5, 511 (S.D.Fla.1990) (observing that 1821(e) was a codification of previously existing banking law, and that claims for future rent were not provable unless the claim had accrued and become fixed on or before the date of insolvency), *aff'd,* 943 F.2d 1290 (11th Cir.1991); *Dabaneh v. FDIC,* 971 F.2d 428, 433–34 (10th Cir.1992) (holding that future rents were not recoverable under either FIRREA or pre-

FIRREA law); *Unisys Corp. v. FDIC,* 724 F.Supp. 454, 456–57 (W.D.Tex.1988) (refusing to allow recovery for future rent under pre-FIRREA law).[6] Because FIRREA worked no substantive change in the law, application of its repudiation and damage limitation provisions would not impair rights Ford possessed when it acted, increase its liability for past conduct, or impose new duties with respect to transactions already completed. *Landgraf, supra.* Therefore, the application of FIRREA to this case is not retroactive.

■ The next argument advanced by Ford contends that failing to allow recovery of its claimed damages against the assets in which it had a valid security interest constitutes a taking of property prohibited by the Fifth Amendment. The Supreme Court has stated that there is no set formula for defining an unconstitutional taking; rather, the circumstances of each particular case must be examined. *Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S. 211, 224, 106 S.Ct. 1018, 1026, 89 L.Ed.2d 166 (1986). The Court has identified three factors that have particular significance in a taking inquiry: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action. *Connolly,* 475 U.S. at 222–25, 106 S.Ct. at 1026. We therefore will evaluate Ford's claim using these inquiries.

Without doubt, the application of FIRREA's lease repudiation provision has some economic impact on Ford. However, the impact is not of the type that normally rises to the level of unconstitutionality. RTC's termination of the lease merely deprives Ford of future rent. This fact distinguishes the instant case from *United States v. Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), upon which Ford relies heavily to support its taking claim. In *Security Industrial Bank,* a creditor loaned money and obtained a security interest (non-

---

**6.** *See also First Empire Bank v. FDIC,* 572 F.2d 1361, 1367 (9th Cir.1978) (citing cases). Ford cites no case with a contrary holding, relying instead on an attempted analogy to *Merrill v. National Bank of Jacksonville,* 173 U.S. 131, 19

S.Ct. 360, 43 L.Ed. 640 (1899). *Merrill,* however, involved neither a claim for future rent nor any other issue of provability similar to that involved in the future rent cases; therefore, it is inapplicable to the instant case.

possessory and non-purchase money) on household goods. Under a subsequent amendment to the Bankruptcy Act, household items were exempted from a debtor's estate; if this amendment had been applied retroactively to the liens at issue, the lender would have lost its security interest and may have recovered little or none of its debt. The Supreme Court held that the amendment was not to be applied retroactively, because such an application would raise a serious taking issue. *Id.,* 459 U.S. at 82, 103 S.Ct. at 414. The lienholder in *Security Industrial Bank* had already loaned money to the debtor and a valid debt was owing, whereas in the present case there was no arrearage of rent and the lessor had not loaned money to Fulton. Ford's leased property, the equipment, was returned to Ford; the repudiation of the lease deprived Ford only of its future rents. *See also LB Credit Corp. v. RTC,* 796 F.Supp. 358, 362 (N.D.Ill. 1992) (distinguishing *Security Industrial Bank* in a similar manner). Therefore, any economic impact on Ford of limiting damages to accrued rent would not be of the nature that the Court found troubling in *Security Industrial Bank.*

■ Relevant to the second *Connolly* factor, as it was to the retroactivity issue, is the nature of pre-FIRREA law. As explained above, a similar repudiation and damage limitation was authorized under banking and thrift law as it existed prior to FIRREA's adoption. Ford could not reasonably have formed an expectation that it would be entitled to all future rent payments contemplated under the leases regardless of the fortunes of Fulton, so no reasonable investment-backed expectation was affected. *See also Connolly,* 475 U.S. at 227, 106 S.Ct. at 1027 ("Those who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end.") (citation omitted).

■ The final factor examines the character of the governmental action. Denial of future profits does not amount to the permanent appropriation of Ford's assets for the government's use. Rather, FIRREA is a public program that adjusts the benefits and burdens of economic life to promote the common good. *Connolly,* 475 U.S. at 225, 106 S.Ct. at 1026; *see also McAndrews v. Fleet Bank,* 989 F.2d 13, 19 (1st Cir.1993) (observing that FIRREA alters contractual rights "in order to stem the disruption of banking services within communities, lessen the costs of bank liquidation, and restore public confidence in the nation's banking system"). Thus the three *Connolly* factors point to the conclusion that depriving Ford of its future profits does not constitute an unconstitutional taking.

■ Ford's other contentions can be dealt with summarily. First, Ford maintains that Section 1821(e)(4)'s reference to leases should be read as applying only to leases of real estate, not personal property. There is nothing in the statute to support this construction. Section 1821(e)(1) allows the receiver to repudiate "*any* contract or lease" (emphasis added). The damage provisions for repudiated leases in Section 1821(e)(4) give no indication that they do not apply equally to all types of leases. Indeed, the immediately following subsection specifically discusses written leases of real property under which the failed financial institution was the lessor. 12 U.S.C. § 1821(e)(5). This is a strong indication that when Congress intended to limit the operation of a provision of FIRREA to leases of real property, it did so explicitly. Ford also contends that the leases should be treated as contracts subject to Section 1821(e)(3) rather than leases. Significantly, Ford argues that the agreements should be treated as contracts rather than leases *solely* for the purposes of FIRREA, showing an unwillingness to forfeit the benefits of structuring the transaction as a lease rather than a sale. Moreover, the documents themselves frequently and consistently refer to the arrangement as a lease.[7] Ford's position cannot be sustained.

---

7. It is debatable whether application of the general contract provision to the leases here at issue would benefit Ford. The provision specifies that damages are limited to actual compensatory losses, with no allowance for lost profit or opportunity. 12 U.S.C. § 1821(e)(3). As discussed *supra,* Ford's proffered calculation of damages is not based on actual compensatory loss, but rather on future rent.

In light of the foregoing, the district court's entry of summary judgment for the RTC is

AFFIRMED.