57 F.3d 1025
 RESOLUTION TRUST CORPORATION, as Receiver for Pioneer
Federal Savings Bank, Plaintiff-Appellant,
v.
UNITED TRUST FUND, INC., a corporation organized and
existing under the laws of the State of Florida, Financial
Federal Savings and Loan Association of Dade County, a
savings and loan association conducting business in Dade
County, et al., Defendants-Appellees,
Liberty Bell Realty Associates Limited Partnership,
Intervenor-Defendant.
RESOLUTION TRUST CORPORATION, as Receiver for Pioneer
Federal Savings Bank, Plaintiff-Appellant, Cross-Appellee,
v.
UNITED TRUST FUND, INC., a corporation organized and
existing under the laws of the State of Florida,
Federal Home Loan Bank of Atlanta,
Defendants-Appellees,
Financial Federal Savings and Loan Association of Dade
County, a savings and loan association conducting
business in Dade County,
Defendant-Appellee, Cross-Appellant,
Liberty Bell Realty Associates Limited Partnership,
Intervenor-Defendant.
In re FINANCIAL FEDERAL SAVINGS AND LOAN ASSOCIATION OF DADE
COUNTY, Petitioner.
RESOLUTION TRUST CORPORATION, as Receiver for Pioneer
Federal Savings Bank,
Plaintiff-Counter-Defendant-Appellant,
Cross-Appellee,
v.
UNITED TRUST FUND, INC., a corporation organized and
existing under the laws of the State of Florida,
Federal Home Loan Bank of Atlanta, Defendants,
Financial Federal Savings and Loan Association of Dade
County, a savings and loan association conducting
business in Dade County, Florida,
Defendant-Cross-Claimant-
Appellee, Cross-Appellant,
Liberty Bell Realty Associates Limited Partnership, a New
Jersey Limited Partnership,
Intervenor-Defendant-Counter-Claimant,
Cross-Defendant-Appellee-Cross-
Appellee.
RESOLUTION TRUST CORPORATION, as Receiver for Pioneer
Federal Savings Bank, Plaintiff-Counter-Defendant-Appellant,
v.
UNITED TRUST FUND, INC., a corporation organized and
existing under the laws of the State of Florida,
Federal Home Loan Bank of Atlanta, Defendants,
Financial Federal Savings and Loan Association of Dade
County, a savings and loan association conducting
business in Dade County, Florida,
Defendant-Cross-Claimant-Appellee,
Liberty Bell Realty Associates Limited Partnership, a New
Jersey Limited Partnership,
Intervenor-Counter-Claimant,
Cross-Defendant-Appellee.
 Nos. 91-5898, 91-5922, 91-6059, 92-4941, 93-4153 and 93-5005.
 United States Court of Appeals,
Eleventh Circuit.
 July 12, 1995.
 
 Richard Bernstein, Alfonso J. Perez, Dora F. Kaufman, Haley, Sinagra & Perez, P.A., Fort Lauderdale, FL, and Dennis Klein, Kevin Crotty, Hughes, Hubbard & Reed, Washington, DC, for Resolution Trust Corporation as Receiver for Pioneer Federal Savings Bank.
 Larry A. Stumpf, Miami, FL, Roger B. Kaplan, Woodbridge, NJ, Roy M. Hartman, Hornsby, Sacher, Zelman & Stanton, P.A., Miami, FL, for appellees in No. 91-5898.
 Larry A. Stumpf, Miami, FL, Roger B. Kaplan, Woodbridge, NJ, James L. Armstrong, III, Miami, FL, for appellees in Nos. 91-5922, 91-6059.
 Roy M. Hartman, Hornsby, Sacher, Zelman & Stanton, P.A., Miami, FL, for Financial Federal Sav. & Loan.
 Roger B. Kaplan, Wilentz, Goldman & Spitzer, Woodbridge, NJ, Larry A. Stumpf, Rubin, Baum, Levin, Constant, Friedman & Bilzin, Miami, FL, for Liberty Bell Realty.
 Appeals from the United States District Court for the Southern District of Florida.
 Before HATCHETT and ANDERSON, Circuit Judges, and FAY, Senior Circuit Judge.
 ANDERSON, Circuit Judge:
 
 
 1
 This appeal involves the interpretation and application of the section of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") relating to the right of a receiver or conservator of a failed financial institution to repudiate a lease, 12 U.S.C. Sec. 1821(e). The case presents the following questions: whether a conservator as well as a subsequently-appointed receiver of a failed financial institution each have an independent right to repudiate a lease under Sec. 1821(e) and whether the "reasonable period" for repudiation of a lease under the statute begins to run with the subsequent appointment. We hold that a conservator as well as a subsequently-appointed receiver has an independent right to repudiate a lease under FIRREA. In addition, we hold that the reasonable period for repudiation begins to run anew with the subsequent appointment. The lease at issue was repudiated within four months of the receiver's appointment; we hold that the lease was repudiated within a reasonable period of time.
 
 
 2
 This case also involves a dispute over the proceeds of a letter of credit which is related to the lease. Both appellees in this case, Liberty Bell Realty Associates ("Liberty Bell") and Financial Federal Savings and Loan Association of Dade County ("Financial Federal") argue that they are due the proceeds of that letter of credit. We partially resolve this issue. We hold that resolution of the claims to the proceeds is dependent upon the construction of the contracts underlying the letter of credit. However, we leave that construction for the district court to resolve on remand.
 
 I. BACKGROUND[1]
 
 3
 A. The Lease, the Letter of Credit, and Related Transactions
 
 
 4
 The lease at issue was part of a sale leaseback transaction in which United Trust Fund, Inc. ("UTF") bought Pioneer Federal Savings Bank's ("Old Pioneer's") corporate headquarters located in Clearwater, Florida for $14 million. Old Pioneer then agreed to lease the property back from UTF for a ten-year period. As part of the transaction, Old Pioneer applied for a standby letter of credit from Federal Home Loan Bank of Atlanta ("FHLB") to serve as security for its obligations under the lease.[2]
 
 
 5
 A standby letter of credit transaction is a three-party agreement involving two contracts and the standby letter of credit. Dibrell Bros. Int'l S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir.1994). The first party is the account party or customer. Here the account party was Old Pioneer. The second party is the issuing institution, usually a bank. Here that party was FHLB. The contract between the issuing party and the account party is one of the contracts involved in a letter of credit transaction. Here Old Pioneer pledged $9 million worth of performing mortgages as collateral for the letter of credit. In the event the letter of credit was drawn upon, the FHLB would be entitled to ask Old Pioneer to reimburse it. If the FHLB was then reimbursed, it would return to Old Pioneer the collateral pledged. Otherwise, the FHLB would have had a right to recover from the pledged collateral.
 
 
 6
 The third party to a letter of credit transaction is the beneficiary of the letter of credit. The contract between the account party and the beneficiary is one of the contracts involved in a letter of credit agreement. The letter of credit itself, an obligation between the issuer and the beneficiary, is the final prong of a letter of credit transaction. Id.
 
 
 7
 In this case, the originally-intended beneficiary appears to have been the lessor, UTF. However, UTF subsequently assigned its interest in the letter of credit to Financial Federal. UTF had applied for a $12 million mortgage[3] from Financial Federal in order to finance the purchase of the Pioneer headquarters. UTF pledged both the property and the rents as security for the loan. As additional collateral for the loan, UTF assigned to Financial Federal the $4.5 million letter of credit. Rights to the letter of credit were assigned to Financial Federal pursuant to a July 30, 1986, agreement between Financial Federal and the United Trust Fund, i.e., the Letter of Credit Transfer Agreement. Old Pioneer named Financial Federal as the beneficiary of the letter of credit in its letter of credit application of the same date. Thus, while a letter of credit agreement usually involves three parties, two contracts and a letter of credit, this case involves four parties, three contractual relationships and a letter of credit as a result of the assignment of the letter of credit.
 
 
 8
 As beneficiary of the letter of credit, Financial Federal could draw down the funds so long as it presented to the FHLB the proper documentation. In this case, the letter itself served as sufficient documentation. The FHLB was obligated to honor the draw without determining whether Old Pioneer, the account party, had in fact defaulted on its obligations in the underlying contract.
 
 
 9
 Liberty Bell became involved in November of 1986, when UTF assigned its rights, title, and interests in the lease and the letter of credit to Liberty Bell. Liberty Bell stands in the shoes of UTF and is both lessor and owner of UTF's rights in the letter of credit. Thus, this opinion will often refer to Liberty Bell/UTF.
 
 B. RTC's Acts as Conservator and Receiver
 
 10
 On February 1, 1990, the Office of Thrift Supervision ("OTS") declared Old Pioneer insolvent and appointed the RTC as its conservator. On March 8, 1990, the OTS placed Old Pioneer into receivership with the RTC as receiver, created a new entity entitled Pioneer Federal Savings Bank ("New Pioneer"), and placed New Pioneer into conservatorship, again appointing the RTC as conservator. Because RTC stands in the shoes of Old Pioneer and New Pioneer, this opinion will sometimes refer to RTC/Pioneer. Under this sort of "pass-through" receivership, substantially all of the assets and liabilities of Old Pioneer in receivership were transferred to New Pioneer and placed in the hands of the federal conservator.[4] During this period, the RTC, acting as conservator, continued to meet its obligations under the lease and even made a decision not to repudiate the lease on or about September 9, 1990.
 
 
 11
 On February 28, 1991, the OTS appointed RTC as receiver of New Pioneer. Shortly thereafter the RTC as receiver entered into a purchase and assumption agreement with Great Western Bank pursuant to which Great Western agreed to purchase some of the assets of New Pioneer and to assume certain of its liabilities. That agreement gave Great Western a 90-day option to take over the lease. On or about June 19, 1991, the receiver learned that Great Western had sent a letter to RTC indicating its intent not to exercise its option on the lease. On June 21, 1991, the receiver sent a letter repudiating the lease effective July 1, 1991, citing as authority for the repudiation 12 U.S.C. Sec. 1821(e). This event triggered the litigation now before us.
 
 C. The Litigation Below
 
 12
 Anticipating that Liberty Bell and Financial Federal would seek to draw on the letter of credit, RTC sought to enjoin Liberty Bell and Financial Federal from doing so. The lower court denied RTC's motion for preliminary injunction prior to the trial. The letter of credit was "drawn down" and the funds were deposited in an escrow account pending the district court's decision. Liberty Bell filed a counterclaim seeking a declaratory judgment that the repudiation was improper and thus constituted a breach of the lease entitling them to draw on the letter of credit and to seek damages under the lease provisions. Financial Federal, also a party to the lawsuit, filed an answer which listed its affirmative defenses claiming, among other things, that it had a right to the proceeds because the repudiation was improper.[5]
 
 
 13
 A trial was held. At trial, Liberty Bell and Financial Federal argued that the repudiation came well over a year after the appointment of the conservator for Old Pioneer and, thus, was untimely. RTC argued that the reasonable period for repudiation began to run anew on its February 28, 1991, appointment as receiver of New Pioneer, making the period at issue less than four months.
 
 
 14
 The court below[6] rejected the RTC's argument that a receiver has a right to repudiate a lease independent of the predecessor conservator's right of repudiation. Thus, the court held that the reasonable period of time for repudiation of the instant lease commenced on or about March 9, 1990, when RTC was appointed conservator for New Pioneer. The court also held that the fifteen and a half month period between the March 9, 1990, appointment of RTC as conservator and RTC's June 21, 1991, repudiation was unreasonable. Having found the repudiation invalid, the court of course found that RTC/Pioneer had defaulted on the lease. Resolution Trust Corp. v. United Trust Fund, 775 F.Supp. 1465, 1469 (S.D.Fla.1991). In a later order, on January 19, 1993, the court awarded the letter of credit proceeds to Liberty Bell as damages for RTC's default under the lease. We address first the validity of RTC's repudiation of the lease, and then we turn to certain of the issues relating to the letter of credit.
 
 
 15
 II. THE VALIDITY OF RTC'S REPUDIATION OF THE LEASE AND ITS
 
 CONSEQUENCES
 
 16
 Under 12 U.S.C. Sec. 1821(e)(1), the RTC has the authority to repudiate leases:
 
 
 17
 In addition to any other rights a conservator or receiver may have, the conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease--
 
 
 18
 (A) to which such institution is a party;
 
 
 19
 (B) the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and
 
 
 20
 (C) the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.
 
 
 21
 Section 1821(e)(2) governs the timing of repudiation:
 
 
 22
 The conservator or receiver appointed for any insured depository institution in accordance with subsection (c) of this section shall determine whether or not to exercise the rights of repudiation under this subsection within a reasonable period following such appointment.
 
 
 23
 When RTC repudiates a lease in accordance with these requirements, RTC is not liable for any damages other than contractual rent through the date of repudiation. The lessor has no claims for damages under an acceleration clause or other penalty provision under the lease. 12 U.S.C. Sec. 1821(e)(4); Resolution Trust Corp. v. Ford Motor Credit Corp., 30 F.3d 1384, 1387 (11th Cir.1994).
 
 
 24
 On appeal, RTC argues that the lower court misconstrued Sec. 1821(e) and that both the conservator and the subsequently appointed receiver had an independent right under the statute to repudiate a lease within a reasonable period of time. RTC argues that the repudiation in this case occurred within four months, i.e., the June 21, 1991, repudiation was less than four months after the March 1, 1991, appointment of Theresa Marble, New Pioneer's receiver. Liberty Bell argues that the district court's construction of Sec. 1821(e) was correct.
 
 
 25
 In Resolution Trust Corp. v. CedarMinn Bldg. Ltd. Partnership, 956 F.2d 1446 (8th Cir.) cert. denied, --- U.S. ----, 113 S.Ct. 94, 121 L.Ed.2d 56 (1992), the Eighth Circuit held that the plain language of FIRREA grants independent rights of repudiation to RTC both in its capacity as conservator and as receiver of an institution. Therefore, even though RTC may succeed itself in the two roles, it retains the right to repudiate leases, regardless of whether it accepted the leases in its prior capacity. The CedarMinn court explained that:
 
 
 26
 Nowhere in the language of the statute is it stated or implied that the appointment of RTC as a conservator negates powers RTC would enjoy if it were later appointed a receiver of the same institution. Had Congress intended RTC's status as a conservator or a receiver to be mere artifice, it would have granted all duties, rights, and powers to the Corporation.
 
 
 27
 CedarMinn, 956 F.2d at 1450.
 
 
 28
 The Eighth Circuit also concluded that a conservator and receiver have independent reasonable periods of time in which to repudiate. Id. at 1451. The CedarMinn court found support for its interpretation in the legislative history, design and language of the statute as a whole. First, the CedarMinn court noted that the statute specifically articulates other situations in which the RTC could pursue an option only in its capacity as receiver, or only in its capacity as conservator, but not both.[7] Id. at 1451-52 and n. 9 (setting forth such other situations). Second, the CedarMinn court found that the traditional rules of statutory construction indicated that the disjunctive "or" gives independent meaning to the words it separates, thus indicating independent rights of repudiation. Id. at 1452-53. Third, the Eighth Circuit noted that the legislative history of FIRREA indicates that the powers granted conservators and receivers under FIRREA were to parallel the powers granted conservators or receivers under the former law. Long established prior law granted to both conservators and receivers the independent right to repudiate contracts. Id. at 1453; see also id. at 1454-55 (against the background of prior law and practice in which a receiver often succeeded a conservator, Congress gave the right to repudiate to both conservators and receivers).
 
 
 29
 The CedarMinn court also recognized that the distinct missions of conservators and receivers necessitated that each retain an independent right to repudiate contracts. The conservator's mission is to conserve assets which often involves continuing an ongoing business. The receiver's mission is to shut a business down and sell off its assets. A receiver and conservator consider different interests when making the strategic decision whether or not to repudiate a lease. Id. at 1453-54.
 
 
 30
 We agree with and adopt the foregoing reasoning of the Eighth Circuit.[8] We hold that a receiver and conservator have independent rights to repudiate. We also hold that each will ordinarily have an independent reasonable period of time to decide whether or not to repudiate a lease.[9]
 
 
 31
 In this case, the relevant period of time commenced with the February 28, 1991, appointment of New Pioneer's receiver. The announcement of the decision to repudiate was made less than four months later. Neither Financial Federal nor Liberty Bell argue on appeal that this three-month and three-week period was unreasonable; we conclude that such a period was reasonable in this case. See Franklin Financial v. Resolution Trust Corp., 53 F.3d 268, 272 (9th Cir.1995) (declining to find that 117-day period between appointment as receiver and announcement of repudiation was unreasonable under the circumstances); 1185 Ave. of Americas Assoc's v. Resolution Trust Corp., 22 F.3d 494, 498 (2d Cir.1994) (finding no genuine issue of material fact foreclosing summary judgment regarding whether ninety-day delay was unreasonable); Monument Square Assoc., Inc. v. Resolution Trust Corp., 792 F.Supp. 874, 878 (D.Mass.1991) (finding interim of three and a half months between appointment as receiver and disaffirmance not unreasonable and indicating that inquiry was fact specific).
 
 
 32
 Having concluded that the RTC's repudiation of the lease was valid,[10] we readily conclude that there was no breach of the lease. It follows from 12 U.S.C. Sec. 1821(e)(4) that the damages for which RTC is liable for repudiating the lease are limited to the rent accruing before the effective date of repudiation. No rent accrued in this case because RTC paid rent through the date of repudiation.
 
 
 33
 Both Liberty Bell and Financial Federal argue on appeal that notwithstanding this court's determination with respect to repudiation, they have a right to the proceeds of the letter of credit. We address certain of these arguments below.
 
 III. LETTER OF CREDIT ISSUES
 
 34
 A. The Argument of Liberty Bell and Financial Federal that the Unconditional Irrevocable Letter of Credit Essentially Nullifies All Obligations Pursuant to the Underlying Contracts
 
 
 35
 Liberty Bell and Financial Federal each argue that the letter of credit was a clean, unconditional, and irrevocable letter of credit which made no reference to the lease or any default under the lease. The letter of credit simply required that the draft presented for payment "be accompanied by this letter and be noted as to its number, date, and amount on the reverse side." Thus, these parties argue, the fact that no default existed is immaterial to the determination of their rights to the proceeds of the letter of credit. We reject this argument for the following reasons. The unconditional draw has been made. Whether the draw was proper or not[11] is moot at this point. Rather, the right to the proceeds of that letter, not the right to draw on the letter, is the issue now before the court.
 
 
 36
 Once the proceeds of a letter of credit have been drawn down, the underlying contracts become pertinent in determining which parties have a right to those proceeds. In other words, an irrevocable standby letter of credit does not nullify the obligations set forth in the underlying contracts. Rather the letter of credit serves, among other things, to shift the burden of litigation. A "letter of credit facilitates the underlying transaction ... by ensuring payment 'up front', thereby shifting the burden of litigation...." Insurance Co. of America v. Heritage Bank, N.A., 595 F.2d 171, 173 (3d Cir.1979). Absent the letter of credit, the burden of the litigation would have rested upon Financial Federal. To collect on its note and mortgage, it would have had to sue Liberty Bell/UTF, which in turn would implead RTC/Pioneer to enforce payment of the rent. However, the letter of credit shifts the burden of the litigation to the account party, here RTC/Pioneer. Thus, Financial Federal as beneficiary of the letter of credit holds the stake during litigation. Ground Air Transfer, Inc. v. Westates Airlines, Inc., 899 F.2d 1269, 1272 (1st Cir.1990) (Breyer, J.) (benefit of letter of credit is any "underlying contract dispute will be 'resolved while [the beneficiary of the letter of credit] is in possession of the money.' ") (citing Itek Corp. v. First Nat. Bank of Boston, 730 F.2d 19, 24 (1st Cir.1984)).[12]
 
 
 37
 In applying for the standby letter of credit, Old Pioneer agreed to bear the burden of litigation should a dispute regarding default arise. However, Old Pioneer did not waive any rights it had pursuant to the underlying contracts. Similarly, the letter of credit did not waive any rights UTF and Financial Federal had pursuant to the underlying contracts.[13] See All Service Exportacao, Importacao Comercio, S.A. v. Banco Bamerindus Do Brazil, S.A., 921 F.2d 32, 35-36 (2d Cir.1990) (noting that injunction on a letter of credit was not the only remedy available to account party as it could proceed against beneficiary on underlying contract).[14] We prefer for the court below to determine in the first instance the proper interpretation of the contractual obligations underlying the letter of credit, i.e., absent a default on the lease, which parties have valid claims to the proceeds.[15]
 
 
 38
 B. The Arguments of Liberty Bell/UTF and Financial Federal Pursuant to 12 U.S.C. Sec. 1821(e)(11) and (13).
 
 
 39
 Both Financial Federal and Liberty Bell argue that notwithstanding this court's determination that the repudiation was proper and valid, i.e., that no default occurred, they still have a right to the proceeds of the letter of credit under Sec. 1821(e)(11) and Sec. 1821(e)(13) which prohibit repudiation of security interests. Section 1821(e)(11) states:
 
 
 40
 No provision of this subsection shall be construed as permitting the avoidance of any legally enforceable or perfected security interest in any of the assets of any depository institution except where such an interest is taken in contemplation of the institution's insolvency or with the intent to hinder, delay, or defraud the institution or the creditors of such institution.
 
 Section 1821(e)(13) states:
 
 41
 No provision of this subsection shall apply with respect to--
 
 
 42
 (A) any extension of credit from any Federal home loan bank or Federal Reserve bank to any insured depository institution; or
 
 
 43
 (B) any security interest in the assets of the institution securing any such extension of credit.
 
 
 44
 The appellees' argument is based on a misunderstanding of the principles involved. Sections (e)(11) and (e)(13) do not by themselves give Financial Federal or Liberty Bell an unconditional right to the proceeds of the letter of credit. This circuit's holding in Resolution Trust Corp. v. Ford Motor Credit Corp., 30 F.3d 1384 (11th Cir.1994), indicates as much:
 
 
 45
 Section 1821(e)(11) assures creditors and others with valid security interests that their valid secured claims will be recognized. But a secured creditor only has rights in the collateral equal to the amount of the creditor's claim. Once that claim is satisfied, the lien is of no further consequence.
 
 
 46
 Id. at 1387-88. Section 1821(e)(4) limits the damages under the lease to rents accrued before a valid repudiation. Id. Thus, appellees have no remaining claim pursuant to the lease. Id. The district court on remand will have to construe the underlying contractual obligations to determine whether either appellee has a claim to the proceeds of the letter of credit independent of and absent a default under the lease. See Part III.A., infra.[16]
 
 IV. OTHER ISSUES
 
 47
 The other issues raised on appeal by Liberty Bell and/or Financial Federal do not merit lengthy discussion. Both Financial Federal and Liberty Bell argue that 12 U.S.C. Sec. 1821(e) cannot be used to repudiate their rights to the letter of credit because RTC was not a party to the letter of credit as required by 12 U.S.C. Sec. 1821(e)(1)(A). Appellees' argument is meritless. As noted above, Old Pioneer was the account party to the letter of credit, and RTC stands in the shoes of Old Pioneer. Even if RTC as an account party could not repudiate the letter of credit under Sec. 1821(e), an issue we need not decide, RTC is not in any event seeking to repudiate the letter of credit. FHLB has already honored its independent obligation to Financial Federal and the proceeds of the letter of credit have been paid over pursuant thereto. To the extent that the proceeds of the letter of credit were to serve as damages under the lease, i.e., future rents, the appellees are not entitled to any of the proceeds of the letter of credit because the lease was properly repudiated and there are no remaining damages under the lease. Appellees obtain no independent benefit from Sec. 1821(e)(1)(A). The district court on remand will have to construe the underlying contracts to determine which parties have claims to the letter of credit proceeds independent of and absent a default under the lease.
 
 
 48
 Finally, Liberty Bell's constitutional challenges to RTC's repudiation are foreclosed by Resolution Trust Corp. v. Ford Motor Credit Corp., 30 F.3d 1384, 1388-89 (11th Cir.1994).
 
 
 49
 For the foregoing reasons, the judgment of the court below is reversed and the case is remanded for further proceedings not inconsistent with this opinion.
 
 
 50
 REVERSED and REMANDED.
 
 
 
 [1]
 This case consists of six numbered appeals, all of which have been consolidated--Nos. 91-5898, 91-5922, 91-6059, 92-4941, 93-4153 and 93-5005. Liberty Bell has filed two motions to dismiss challenging appellate jurisdiction, both of which were carried with the case. The first such motion challenged the earlier appeals, which appealed from the judgment dated September 3, 1991, and the final amended judgment dated October 3, 1991, which judgments implemented the district court's determination of liability as reflected in its opinion published at 775 F.Supp. 1465 (S.D.Fla.1991). Liberty Bell argued that those judgments, determining liability but reserving ruling on damages, could not be appealed under Fed.R.Civ.P. 54(b). Because an appeal from the subsequent judgment resolving damages properly brings the entire case before us in any event, the issues raised by Liberty Bell are moot
 On January 19, 1993, the district court rendered final judgment resolving the remaining damages issues. Both RTC and Financial Federal filed timely appeals. Liberty Bell's second motion to dismiss argues that these appeals were ineffective because of Financial Federal's cross-claim which was also filed on January 19, 1993; Liberty Bell argues that Financial Federal's cross-claim sought to alter or amend the January 19, 1993, judgment and thus tolled the time for filing appeals. We do not think the cross-claim sought to alter or amend the January 19, 1993, judgment, and in any event, another appeal was filed after the district court denied the cross-claim. Thus, we readily conclude that all of the issues asserted by the several parties in this appeal are properly before us.
 The district court's denial of Financial Federal's cross-claim is vacated; for the reasons stated in this opinion, it is necessary for the district court on remand to resolve Financial Federal's claim to the proceeds of the letter of credit. See, e.g., footnote 15 of this opinion. One of the appeals consolidated with this case, No. 92-4941, was a petition for a writ of mandamus in which Financial Federal requested that the district court be instructed to cease ordering distribution of the letter of credit proceeds. The petition is denied as moot in light of the instructions to the district court contained in this opinion.
 
 
 [2]
 In its application for the standby letter of credit, Old Pioneer wrote: "Security for obligations of member under Lease Agreement. (Sale Leaseback of Corporate Headquarters)"
 
 
 [3]
 As part of its financing arrangements, UTF also took out a $2 million mortgage with Old Pioneer in order to complete the financing of its sale leaseback transaction with Old Pioneer. UTF pledged the property as collateral for the $2 million mortgage
 
 
 [4]
 Through this process, some liabilities, e.g., subordinated debt and stock for example, stayed with the receiver for Old Pioneer thus eliminating losses to the New Pioneer conservatorship and facilitating administration of the conservatorship
 
 
 [5]
 The Federal Home Loan Bank was dismissed as defendant in this case pursuant to court order as its interest in the litigation ended once the letter of credit proceeds were drawn down
 
 
 [6]
 The trial was conducted by the magistrate judge pursuant to consent of the parties. 28 U.S.C. Sec. 636(c). The opinion is published at 775 F.Supp. 1465 (S.D.Fla.1991)
 
 
 [7]
 Liberty Bell argues that CedarMinn fails to take into account the language of 12 U.S.C. Sec. 1821(d)(14)(B). This provision governs the determination of the date on which the statute of limitations begins to run on any claim brought by the RTC as conservator or receiver. Liberty Bell argues RTC's position in this case would permit RTC to revive successive, independent and renewable statute of limitation periods. Liberty Bell's argument is misplaced. The language of Sec. 1821(d)(14)(B) is different; that provision requires that the statute of limitation begins to run upon the appointment of the Corporation as conservator or receiver. Unlike the language of the provision at issue here, there is no indication in the language of Sec. 1821(d)(14)(B) of separate and independent periods of limitation for a conservator and receiver. Nor does the difference in the roles played by a conservator and receiver indicate a need for separate and independent periods of limitations under Sec. 1821(d)(14)(B). Liberty Bell's analogy is inapposite
 
 
 [8]
 The Eighth Circuit in CedarMinn deferred to RTC's interpretation of the statute as it found that interpretation reasonable. Chevron, U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694. However, the Second Circuit in 1185 Avenue of the Americas Assoc's v. Resolution Trust Corp., 22 F.3d 494 (2d Cir.1994), held that it did not owe full Chevron deference to the RTC's interpretation of Sec. 1821 as several agencies in addition to the RTC were charged with administering the statute. We need not address whether deference to RTC's interpretation is appropriate because the reasons discussed in the text lead us to the same conclusion
 
 
 [9]
 Appellees have not clearly presented an argument that, even though a receiver has a right to repudiate independent of the decision by a predecessor conservator, the appointment here constitutes such an abuse of the statutory procedures that the court should disregard as a sham the February 28, 1991, appointment of RTC as receiver. Appellees merely suggest vaguely that there was little difference in the roles played in this case by RTC as conservator and as receiver, both being interested in selling and liquidating the institution. However, the mere fact that the RTC, during the course of a conservatorship, contemplates an ultimate liquidation, does not rise to the level of an abuse which would nullify the subsequent appointment of a receiver and warrant disregard of the receivership as a sham. 1185 Avenue of the Americas Assoc's v. Resolution Trust Corp., 22 F.3d 494 (2d Cir.1994) (expressly so holding on similar facts). Also noticing no abuse on similar facts are Franklin Savings Assoc. v. Office of Thrift Supervision, 35 F.3d 1466 (10th Cir.1994) and Resolution Trust Corp. v. CedarMinn Bldg. Ltd. Partnership, 956 F.2d 1446 (8th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 94, 121 L.Ed.2d 56 (1992). See also Lawrence F. Bates, Overview of Financial Institution Liquidations and Recent Legislation, C646 ALI-ABA 391, 407 (1991)
 
 
 [10]
 Liberty Bell also argues that the receiver unlawfully delegated the decision to Great Western and did not make an independent analysis regarding whether or not to repudiate the lease. We conclude that this argument is without merit. The receiver acted within its discretion in recommending the repudiation of the lease. The receiver exercised its discretion when it gave the buyer the option to take or reject the lease. When Great Western decided not to exercise its option on the lease, it was within the receiver's discretion to determine that the lease was burdensome in accordance with Sec. 1821(e)(1)(C), and that repudiation of the lease would promote the orderly administration of the institution's affairs, i.e., the liquidation of the assets, as required under Sec. 1821(e)(1)(B). Failure to repudiate the lease in this situation would have clearly been burdensome and would certainly not have promoted the orderly liquidation of New Pioneer's assets
 
 
 [11]
 Although we need not and do not decide this issue, the draw would seem to have been proper. The letter itself appears to have been both irrevocable and unconditional and the issuing bank was to have produced the $4.5 million dollars upon presentation of the letter itself without further documentation. This is consistent with the purpose of such a letter. The "independence principle" is an important aspect of a letter of credit arrangement as an issuer's obligation to a beneficiary is independent of performance under related contract. Except for the narrow exception of fraud on the contract, an issuer must honor the engagement to pay upon presentation of proper documents regardless of the beneficiary's performance of underlying contract. See Republic Nat. Bank v. Fidelity & Deposit Co., 894 F.2d 1255, 1258 n. 4 (11th Cir.), cert. denied, 498 U.S. 926, 111 S.Ct. 308, 112 L.Ed.2d 261 (1990)
 
 
 [12]
 See also, Lisa G. Weinberg, Note, Letter of Credit Litigation--Bank Liability for Punitive Damages, 54 FORDHAM L.REV. 909, 909 (1986) ("Without the letter [of credit], the customer could withhold payment in the event of a dispute.... With the letter, however, the issuer must pay the beneficiary if the documents conform, despite any disagreement concerning the underlying contract. If a dispute arises, execution of the letter forces the customer to sue the beneficiary.")
 
 
 [13]
 See Letter of Credit Transfer Agreement (expressly addressing, inter alia, the party to which the proceeds should be paid under the various circumstances, whether Financial Federal, UTF, or Old Pioneer)
 
 
 [14]
 See also, Michael Stern, Note, The Independence Rule in Standby Letters of Credit, 52 U.CHICAGO L.REV. 218, 238 (1985) (arguing against the proposition that breach of contract should fall within the narrow fraud exception; and noting that that would risk double litigation on the merits of the underlying contractual dispute, "once when an injunction is sought against payment on the standby letter of credit, and a second time when a suit is brought on the contract itself.")
 
 
 [15]
 For example, one significant issue of interpretation of the underlying contract is whether the letter of credit was collateral to secure Old Pioneer's obligations under the lease or whether it independently secured UTF's promise to repay its note to Financial Federal. In other words, was the letter of credit security for the note to Financial Federal only indirectly because it secured the rental payments, or was it intended to be security for UTF's note to Financial Federal independent of any default in the lease ?
 
 
 [16]
 The district court will have to determine whether the letter of credit secured UTF's note to Financial Federal independent of any default in the lease. See Note 15, infra